VAN NESS *against* HAMILTON and others.

THIS was an action for a libel. The declaration contained three counts. The first count stated, that the plaintiff now is, and at the time of writing, printing, and publishing, &c., and for a long time before had been, one of the Judges of the Supreme Court, and, as such, one of the *Council of Revision*, &c. That the defendants, well knowing, &c. and falsely and maliciously intending, &c., on the 26th of *January*, 1820, in a certain newspaper, entitled " *The American*," No. 95., falsely, wickedly, and maliciously, did devise, write, print, and publish, of, and concerning the plaintiff and of and concerning the plaintiff, in his office of Judge, and member of the Council of Revision, a certain libel, &c. (*a*) setting forth the publication with inuendoes.

A plea in bar of the plaintiff's action, must be certain to a common intent, and direct and positive in the facts set forth, stating them with all necessary certainty.

In a plea in justification of a libel, that the subject comprehends multiplicity of matter tending to prolixity, is no excuse for general pleading; nor is it sufficient that the plea is as general as the charge in the declaration; but it ought to state specifically the facts on which the charge was founded, to give the defendant an opportunity of denying, and taking issue upon them.

As, where the defendant charged the plaintiff, being a member of the Council of Revision, with receiving money for services rendered in procuring an act of incorporation to be passed, he must, in his plea of justification, state the particular facts which make out the charge, with certainty, so that the plaintiff may take issue on those very facts. A plea which professes to be an answer to the whole declaration, but omits to answer a material part, is bad, on demurrer.

(*a*) The publication was, as follows : " *To the public.* We now present you in a detailed form, the circumstances which have induced us to speak and think of Judge *W. W. Van Ness*, as a public delinquent. In the course of the narrative, we have introduced the names of two other persons : one of them was not, at the time of the first application, in any public situation, and is, therefore, less amenable to your censure ; and the other, though equal in guilt, has neither the influence of public station, nor commanding talents, to render his example contagious.

" In the winter of 1812, two applications were made to the legislature, of this state, for bank charters, both purporting to be in behalf of the directors and stockholders of the old *United States Bank*. The one set of petitioners offered to the state, 500,000 dollars, in specie, with the pledge of loaning to it as much more, at an interest of five per cent. when so required, on condition of obtaining an act of incorporation. The other petitioners, for the like boon, offered to the state 600,000 dollars, to be paid in six annual instalments ; but with more accurate knowledge of the impediments to be surmounted than their rivals, they followed up this offer, by the mission of two experienced and discreet agents, to *Albany*, for the purpose of explaining the policy as well as propriety of giving a preference to their suit. They were not mistaken ; the sense of public duty yielded to stronger considerations. The institution making the least beneficial offers to the state prevailed. And the *Bank of America*, notwithstanding its contingent and very uncertain

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

The second count was for *publishing*, and causing to be published, &c. as in the first count.

The *third* count was for *devising*, and publishing, and causing to be published, a libel, &c. as in the second count.

boons, in opposition to the immediate payment in specie, promised by the other applicants, was incorporated. This bare recital of the transaction is conclusive, as to the means by which it was accomplished. Mr. *W. W. Van Ness* was then, as he now remains, a Judge of the Supreme Court, and, consequently, a member of the Council of Revision. *Jacob R. Van Rensselaer,* was in the Assembly, from *Columbia* county, and *Elisha Williams,* from the same county, attended in the lobby of the house, a self-elected representative. These three persons were strenuous advocates for chartering the *Bank of America;* the influence of their standing and talents was, perhaps, essential to its success, and they were most openly exerted to promote it. Notwithstanding much opposition, and the prorogation of the legislature, on the express ground of the corrupt practices made use of to carry through that charter, it was finally obtained. The war with *Great Britain,* however, having intervened, it was soon found, that the capital of the bank (six millions) was too large, and the bonus too oppressive, to realize the hopes of profit entertained by its projectors.

" The same means, therefore, which, in 1812, had secured a preference of it, over a rival institution offering greater inducements to the state, were again resorted to, in 1813, in order to obtain a reduction of its capital and bonus; and they were equally succesful. The legislature gave up 500,000, of the 600,000 dollars promised by the bank, and the Council of Revision concurred in the act!!! The capital, at the same time, was reduced to four millions.

" For these double services, it was stipulated, on behalf of Messrs. *Van Ness, Williams, Van Rensselaer,* all of *Columbia* county, that the *Bank of Columbia,* in which they were interested, and of which the two latter were directors, should have a credit, during fifteen years, with the *Bank of America,* for one hundred and fifty thousand dollars. On the sums advanced in virtue of this credit, the *Bank of Columbia* was either to pay six per cent. interest, to the *Bank of America,* of which three per cent. was, afterwards, to be refunded to the three above named persons, or the *Bank of America,* was, in reality, only to receive three per cent. interest on any sums thus advanced, whatever rate of interest was to have been paid by the *Bank of Columbia.* To this part of the narrative there are two versions above given; and though we strongly incline to the truth of the first, we have thought it best to state both, and the more so, as the nature of the transaction is very little varied which ever be the true one. To secure the *Bank of America* for this credit, the *Bank of Columbia* was to execute its annual bond, to which was to be added the personal bond of these individuals already na-

The defendants, (*J. A. Hamilton, Johnston Verplanck,* and *Charles King*,) pleaded ten pleas.

In the *first* plea, the defendants say, that before the time

med. The above agreement made with the agents of the *Bank of America*, when submitted to the board of directors was opposed, as equally unjust and dishonourable. After some delay, a commutation was offered and accepted, in virtue of which twenty thousand dollars were paid to Mr. *Williams*, for himself, *Van Ness, and Van Rensselaer*, on condition of either renouncing, as the case may be, the return of three per cent. interest, on the sums advanced to the *Bank of Columbia*, or that the interest paid by the *Bank of Columbia*, should thenceforth be six, instead of three per cent. The *Bank of Columbia* has, to this day, its credit with the *Bank of America*, on payment of six per cent. interest. And Mr. *Williams* did receive the 20,000 dollars. With this money in his keeping, he returned to *Hudson*, and showed so little disposition to a division, that his coadjutors became alarmed for their shares, and even talked of exposing him; and it was not until after Mr. *Williams* had compelled them to acquiesce in the admission of a fourth person, whom we forbear to name, to an equal division of the spoil, upon the express ground of this fourth person having rendered equal services in obtaining the charter, that he would consent to its distribution. The 20,000 dollars were then divided, as follows: to Mr. *Williams*, 5,000, to Mr. *Williams*, as creditor for the fourth person, 5,000, to Judge *Van Ness*, member of the Council of Revision, 5,000, and to *Jacob R. Van Rensselaer*, member of the Assembly, 5,000.

" Upon this statement of facts, we rest our defence of the charges of delinquency, which we have brought, and here distinctly repeat, against Judge *W. W. Van Ness.* In some unimportant particulars we may be incorrect, but all the essential parts are susceptible of conclusive proof. This we are prepared to produce to the legislature, should they feel it their duty to inquire into the charges ; or, should the accused appeal in his defence to the laws of our country, we are there ready to establish the truth of our assertions. Until brought before a competent tribunal, we absolutely decline all discussion on this subject, and leave the authority due to our assertions to be decided by the circumstances under which they are made, and the probable motives and objects of those who made them.

A public accusation, preferred without responsibility, and for unjustifiable purposes, would be entitled to but little consideration ; but when urged by those who have no apparent end of personal interest to attain, nor feelings of personal animosity to gratify; who risk property and character in the fulfilment of a duty hazardous in its execution, and doubtful in its consequences, it should be supposed to be grounded on a, full knowledge, and with a fair development of the truth. This justice we ask, because we apprehend, that our charges, in detail, will be met as they were in the aggregate, by bold denial, or partial explanation ; and we would prepare the public mind against a course which is not calculated to promote the public interest, by elucidating truth.

of devising, &c. the supposed libels mentioned in the decla-
ration, and whilst the plaintiff was a Judge of the Supreme
Court, and, as such, one of the Council of Revision, an ap-
plication or petition, purporting to be made on behalf of a
portion (1) of the directors and stockholders of a certain
company usually known by the name of the *Bank of
the United States,* (the charter of incorporation of which
company had then lately expired,) was made and pre-
sented to the legislature, by which the said (1) applicants
or petitioners, offered to pay the state of *New-York,* the sum
of 500,000 dollars, in specie, and to loan to the state, when
required, another sum of 500,000 dollars, at the interest of
five per cent. per annum, provided the legislature would
grant them a charter of incorporation; and that another ap-
plication or petition, also purporting to be made by, or on
behalf of another portion (1) of the directors and stock-
holders of the said company, was also made and presented
to the legislature; by which they, the last mentioned (1)

" The proper tribunal is open to the aggrieved, and we invite him to ac-
company us thither, and submit his character, with ours, to its decision.
If we know ourselves, this charge is not preferred through malice, or per-
sonal hostility.    In the possession of the facts, we have withheld their pub-
lication, in the hope that Judge *Van Ness,* from a sense of self interest,
if not regard to the public, would spare us the pain of so doing, by ab-
staining from an interference in politics, foreign to the duties, and de-
grading to the character of his station; but he has decided otherwise,
and though it may have been compatible with our sense of justice, or, at
least, of mercy, to have spared the penitent offender, it is neither recon-
cilable with the responsibility we have assumed, nor a due regard to our
own characters, to behold with indifference, while we have the power to
check, the continued machinations of this hardened and corrupt politician.
That power, unless we greatly misjudge the state of public feelings, and
of public morals, we certainly possess; and in its exertion for beneficial
purposes, and on public grounds, we have a right to anticipate the coun-
tenance and support of an honourable community.    If it does not result
in an unavoidable inference from the facts we state, that Judge *Van
Ness,* a member of the Council of Revision, did take money for services
rendered, in procuring the enactment of the law, incorporating the *Bank
of America,* we have mistaken the nature of evidence, and the connexion
between cause and effect.    But if this inference be unavoidable, then it
is a public benefit to drag such an offender from the bench; and the en-
terprize, in proportion as it is painful and hazardous, must derive its sup-
port and reward from public approbation."

applicants or petitioners, offered to pay to, and for the use of the state, the sum of 600,000 dollars, in six annual instalments, provided the legislature would grant them an act of incorporation under the style and name of the *President, Directors and Company of the Bank of America.*

That the last mentioned applicants (1) or petitioners, sent and despatched *two agents* (1) to *Albany*, on their part and behalf, to solicit, obtain, and procure an act of incorporation to be granted them ; and the plaintiff, then being such Judge of the Supreme Court, and member of the Council of Revision, and one *Jacob R. Van Rensselaer*, then being a representative of the county of *Columbia*, in the House of Assembly, and one *Elisha Williams*, were strenuous advocates for the granting such act of incorporation to the last mentioned applicants or petitioners; and the influence and standing of the plaintiff, *Elisha Williams*, and *Jacob R. Van Rensselaer*, was most openly exerted to procure the granting of such act, *they, the said agents, then and there using and employing corrupt means* (2) to carry through, and obtain such charter ; and, afterwards, notwithstanding much opposition to the application, and notwithstanding the legislature had been prorogued by the governor, on the express ground, *that corrupt practices had been made use of* (3) to carry through, and procure from the legislature an act of incorporation ; yet, they, the said last mentioned applicants or petitioners, and their associates and successors, on the 2d of *June*, 1812, were, by an act of the legislature, created a body politic and corporate, as a bank, and for banking purposes, with the capital of 6,000,000 dollars, by the name of the *President Directors and Company of the Bank of America*, and the application or petition of the first mentioned applicants or petitioners was withdrawn by them, in despair of succeeding in their application.

That on the 1st of *February*, 1813, the *President Directors and Company of the Bank of America*, made, and presented an application or petition to the legislature praying to be discharged from the payments to the state of the sum of money offered to be paid as the consideration for the granting of the said act of incorporation, and that in lieu and discharge thereof, the legislature would accept of the

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

sum of 100,000 dollars, and that the capital stock of the *Bank of America* might be reduced to 4,000,000 dollars; and the legislature, on the 20th of *March*, 1813, did reduce the amount of the sum offered to be paid as aforesaid, to 100,000 dollars, and the capital to 4,000,000 dollars, and did pass an act for those purposes, to which the Council of Revision assented, the plaintiff then being a member of the council, and voting for the said act becoming a law.

That both before and after the prorogation of the legislature as aforesaid, and both before and after the passing of the act of incorporation, and before the passing of the act reducing the sum of money offered as aforesaid to be paid to the state, and reducing the amount of the capital of the bank, divers corrupt means were used and employed by the applicants or petitioners, and by their agent or agents, to procure the passing of the act of incorporation, and by the *President Directors and Company of the Bank of America*, and by their agent or agents, to procure the passing of the act reducing, &c. that is to say,** *they, the said applicants or petitioners, or their agent or agents, and they, the said President Directors and Company of the Bank of America, when so incorporated as aforesaid, or their agent or agents,* (4) paid, and caused to be paid to divers persons, divers large sums of money to be employed by them in and about the soliciting, obtaining, and procuring, of the passing of the before-mentioned acts of the legislature, that is to say, to *A. B.* &c. (persons whose names are stated in the plea) the sum of 250,000 dollars, and *to divers other persons,* (4) the sum of other 250,000 dollars; which sums *they, the said persons to whom they were paid, and caused to be paid as aforesaid, used, laid out, and expended,* (5) in procuring, soliciting, and purchasing the votes and influence of *C. D.* &c. (certain persons named in the plea,) then being members of the legislature, *and of divers other persons, being members of the said legislature,* (5) in favour of the passing of the said acts; and, further, *that the said several persons to whom the said several sums of money had been paid, or caused to be paid as aforesaid, and other the agent or agents of the said last mentioned applicants or petitioners, and of the said President, &c. of the Bank of America, when so incorporated as aforesaid,* (6) offer-

ed, and attempted to pay, hire, bribe, and corrupt *E. F.* &c., (certain persons particularly named,) members of the legislature, *and divers other persons also being members of the said legislature*, (6) to give and exert their votes and influence in favour of the passing of the said acts; and, further, *that in order to secure the influence of Elisha Williams, and of one Theron Rudd, the last mentioned applicants or petitioners, or their agent or agents*, (7) did promise, and agree to grant, and the *President, &c. of the Bank of America*, when incorporated, did thereafter grant to a certain incorporated company, known by the name of the *President, &c. of the Middle District Bank*, in which bank *Williams* and *Rudd* were largely interested, a loan or credit of 200,000 dollars, for the term of fifteen years, at six per cent. per annum; and, further, *that the said applicants or petitioners, or their agent or agents, and the President, &c. of the Bank of America, or their agent or agents, paid, and caused to be paid, to divers other persons, and promised, and agreed to pay, and to lend and advance to divers other persons, divers other large sums of money*, (8) in consideration of the services theretofore rendered, and thereafter to be rendered in the premises, and used and employed *various other corrupt, improper, and unlawful means* (9) in the procuring of the passing of the said acts of the legislature.**

That before the passing of the said acts of the legislature, *Elisha Williams*, and *Jacob R. Van Rensselaer*, were two of the directors and stockholders, and respectively owned some part of the stock of a certain incorporated company, known by the name of the *President, Directors and Company of the Bank of Columbia.* (10.)

[That before the passing and enactment of the said several acts of the legislature, to wit, on the 1st of *February,* 1812, *it was promised and agreed by a certain person, or certain persons, being the agent or agents of the applicants or petitioners, for the said act of incorporation, to and with the plaintiff, Williams and Van Rensselaer, or to and with one or more of them, on the behalf of himself, or themselves, and on the behalf of the other or others of them*, (11) that if the said applicants should obtain an act of incorporation with their aid, the *President, &c. of the Bank of Columbia,* of

*ALBANY,*
January, 1822.

VAN NESS
v.
HAMILTON.

which *Williams* and *Van Rensselaer* were two of the direc-tors and stockholders as aforesaid, (10) should, for the pe-riod of fifteen years, have a credit with the *President, &c. of the Bank of America,* when incorporated, to the extent of 150,000 dollars, the *Bank of Columbia* paying interest to the *Bank of America,* when incorporated as aforesaid, on the several and respective sums thereafter, by virtue of the said credit, to be lent and advanced by the *Bank of Ame-rica* to the *Bank of Columbia,* at the rate of six. per cent. per annum; and that in order to secure the *Bank of Ame-rica* when incorporated as aforesaid, the re-payment of the several sums of money, with interest at the rate aforesaid, thereafter to be lent to the *Bank of Columbia,* the *Bank of Columbia* should, in each and every year, deliver to the *Bank of America,* when incorporated as aforesaid, the bond or obligation of the major part of the persons, then being the Directors of the *Bank of Columbia,* for the amount of the said credit; and *it was further promised and agreed by the agent or agents aforesaid, to and with the plaintiff, Williams and Van Rensselaer, or to and with one or more of them, on behalf of himself or themselves, and on the behalf of the other or others of them,* (11) that of the sum or sums of money to be paid by the *Bank of Columbia,* as and for the interest at the rate aforesaid, the one half part thereof should be paid over by the said *President, &c. of the Bank of America,* when incorporated as aforesaid, *to the said plaintiff, Williams, and Van Rensselaer, or to some or one of them, for the use and benefit of himself or themselves, and for the other or others of them.*] (11)

That on the 18th of *May,* 1813, the said agreement and arrangement made *by the plaintiff, Williams, and Van Rens-selaer, or by some or one of them for them all, or by some other person or persons acting in their behalf, with the agents for the applicants for the incorporation of the Bank of America, was submitted,* (12) to the Board of Directors of the *Bank of America,* that is to say, to the *President and Directors of the Bank of America,* and the said agreement being then and there opposed, by *certain of the directors* (12) of the *Bank of America,* as unjust and dishonourable, after some delay, the President and Directors last afore-

said, offered to pay to *Williams*, for and on account of him-
self, the plaintiff, and *Van Rensselaer*, the sum of 20,000
dollars, on condition that the plaintiff, *Williams*, and *Van
Rensselaer*, would exonerate and discharge the *Bank of
America*, from the payment to them, of the one half part
of the sum or sums of money to be paid as aforesaid, by
the *Bank of Columbia*, as and for the interest, at the rate
aforesaid, on the several and respective sums of money to
be lent and advanced, by the *Bank of America*, to the
*Bank of Columbia*, in pursuance of the aforesaid agreement
or arrangement; and the said offer of the *President, &c. of
the Bank of America*, on the condition aforesaid, being then
and there *accepted and acceded to by Williams, on the part
and behalf of himself, the plaintiff, and Van Rensselaer, the
Bank of America, paid to Williams, for himself, Van Rens-
selaer, and the plaintiff, the sum of money last aforesaid;* (12)
and the *Bank of Columbia* hitherto, and at all times since,
have possessed the aforesaid credit for 150,000 dollars,
subject to the payment of interest on the sums of money,
frome time to time advanced, at the rate of six per cent.
per annum.

That *Williams* went, and proceeded to, and arrived at,
*Hudson*, with the said 20.000 dollars, in his possession and
keeping, and then and there showed so little disposition to
distribute and pay to the plaintiff, and *Van Rensselaer*, the
respective parts or portions which they claimed thereof,
that the plaintiff and *Van Rensselaer* became alarmed, and
threatened to expose *Williams*; nor would *Williams* con-
sent to divide and distribute the said sum of money, until
the plaintiff and *Van Rensselaer* had consented *that a fourth
person*, (13) should be admitted to an equal participation,
in the said sum of money, with the plaintiff and *Williams*,
and *Van Rensselaer*, he, *Williams*, pretending and expressly
alleging that the said fourth person had rendered equal ser-
vices in procuring the charter of incorporation of the *Bank
of America*.

That the said sum of 20,000 dollars was divided and
distributed by *Williams*, between, and among the plaintiff,
*Williams*, and *Van Rensselaer*, in such manner that *Wil-
liams* took, retained, and appropriated to himself, in his own

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

name and right, a large part or portion thereof, to wit, the sum of 5,000 dollars, and also, took, retained, and appropriated to himself, as the creditor of the above-mentioned fourth person, another large part or portion thereof, to wit, the sum of 5,000 dollars; and also, then and there, paid to the plaintiff, then and there being such Judge of the Supreme Court, and member of the Council of Revision as aforesaid, another large part or portion thereof, to wit, the sum of 5,000 dollars, which said last mentioned sum of money was paid to the plaintiff, then being one of the Judges of the Supreme Court, and member of the Council of Revision, and by him received, for his services, in procuring the passing and enactment of the several acts of the legislature, herein before-mentioned; and that, also, *Williams* paid unto *Van Rensselaer*, another large part or portion, to wit, 5,000 dollars, for which reason the defendants, on, &c. did devise &c. the said supposed libel, &c.

Second Plea.    The second plea was like the first, except the paragraph in a parenthesis, instead of which this plea stated : That before the passing and enactment of the said several acts of the legislature, to wit, on the 1st of *February*, 1812, *it was promised and agreed by a certain person, or certain persons, then and there being the agent or agents, for the said act of incorporation, to and with the plaintiff, Williams, and Van Rensselaer, or to and with one or more of them, on the behalf of himself or themselves, and on the behalf of the other ior others of them,* (11) that if the said applicants should obtain an act of incorporation with their aid, the *President, &c. of the Bank of Columbia,* of which *Williams* and *V. R.* were two of the directors and stockholders, (10) should, for the period of 15 years, have a credit with the *Bank of America,* to the extent of 150,000 dollars; that upon the several and respective sums of money thereafter to be lent and advanced, to the *Bank of Columbia,* by virtue of such credit, the *Bank of Columbia* should pay to the *Bank of America,* when incorporated, to and for the sole use and benefit of the *B. of A.,* interest at the rate of three per cent. per annum, and *to the plaintiff, W., and V. R., or to some or one of them, to and for the use of himself or themselves, and of the other or others of them,* (14) such

further and other rate of interest, as might thereafter be agreed upon, by and between the *Bank of Columbia*, and the plaintiff, *W.*, and *V. R.*, to and for the sole use and bene- fit of the plaintiff, *W.*, and *V. R.* ; and that in order to secure to the *Bank of America* the re-payment of the several and respective sums of money, with interest at the rate aforesaid, thereafter to be lent and advanced, by the *B.* of *A.*, to the *Bank of Columbia*, the *Bank of Columbia* should, in each and every year, deliver to the *Bank of A.*, the bond or obligation of the major part of the persons then being the Directors of the *Bank of Columbia*, for the amount of the said credit, with the interest to accrue thereon, at and after the rate last aforesaid.

The *third* plea resembled the *first*, except that it alleged, Third Plea. that after the passing of the act of incorporation, and prior to the passing of the act reducing the capital, &c., it was promised and agreed, *by a certain person or certain persons, being the agent or agents of the B. of A., to and with the plaintiff, W., and V. R., or to and with one or more of them, on the behalf of himself or themselves, and on the behalf of the other or others of them*, (11) that in consideration of the services, theretofore rendered and performed by the plaintiff, *W.*, and *V. R.*, in and about the act of incorporation, and in consideration that they should, thereafter, use and employ their aid, exertions, and influence, in and about the procuring of the granting of the petition, for the reduction of the amount offered to be paid to and for the use of the state of *N. Y.*, and reducing the capital stock of the *B. of A.*, the *Bank of Columbia*, of which *W.* and *V. R.*, were then two of the Directors, should have a credit, &c., as in the first plea.

The *fourth* plea resembled the second, except alleging, Fourth Plea. that intermediate to the passing of the two acts, *it was promised and agreed by a certain person or certain persons, being the agent or agents of the Bank of A., to and with the plaintiff, W., and V. R., or to and with one or more of them, on the behalf of himself or themselves, and in the behalf of the other or others of them*, (11) that in consideration, &c., as in the third plea, and stating the agreement in the same manner as in the second.

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

Fifth Plea.

The *fifth* plea alleged, that on the 20th of *March*, 1813, it was promised and agreed by a certain person, or certain persons, being the agent or agents of the *Bank of America*, &c. as in the fourth plea, that in consideration of the aid, exertions, and co-operation as aforesaid, rendered by the plaintiff, *W.*, and *V. R.*, in and about the procuring of the passing of the act of incorporation, and of the act reducing the sum of money offered to be paid to the state of *New-York*, and also reducing the capital stock of the *Bank of America*, the *Bank of Columbia*, of which *W.* and *V. R.* were two of the directors and stockholders, &c.   In other respects, this plea resembled the first.

Sixth Plea.

The *sixth* plea stated the agreement to have been made at the time, and on the consideration mentioned in the fifth plea, and in other respects corresponded with the second.

Seventh Plea.

The *seventh* plea resembled the fifth, except that between the allegation that *W.* and *V. R.* were two of the directors and stockholders of the *Bank of Columbia*, and the statement relative to the credit to be granted to the *Bank of Columbia*, it averred, that the plaintiff so, as aforesaid, used and exerted the influence of his talents and standing, in and about the promoting of the passing and enactment of the act of incorporation of the *Bank of America*, under, and with the hope and expectation of being compensated and rewarded for his services in the premises, *by the applicants or petitioners* for the incorporation of the *Bank of America*, in case of the eventual success of their application ; and gave his aid and co-operation in the premises, with the expectation and belief that he would be compensated and rewarded as aforesaid, in case of the eventual success of their application. (14.)

Eighth Plea.

The *eighth* plea contained the additional averment introduced into the seventh, and in all other respects resembled the sixth plea.

Ninth Plea.

The *ninth* plea stated, that before the time of devising, &c. the supposed libel, and while the plaintiff was a Judge of the Supreme Court, and a member of the Council of Revision, a petition or application, purporting to be made by, and on behalf of certain persons, (15) formerly directors and stockholders of the *Bank of the United States*, the charter of which had

then lately expired, was made and presented to the legis- <span style="float:right">ALBANY,</span>
lature of the State of *New-York*, whereby the said appli- January, 1822.
cants, for themselves and their associates, prayed to be in- VAN NESS
corporated as a bank in the city of *New-York*, and for bank- v.
ing purposes, by the name of the *President, &c. of the Bank* HAMILTON.
*of America.*

That the said applicants or petitioners, *or some of them*,
(15) sent and despatched certain persons, to wit, one *George*
*Newbold*, and one *Henry Post, Jun.* as the agents of the said
applicants or petitioners, to the city of *Albany*, then and
there, on their part and behalf, to solicit, obtain, and pro-
cure such act of incorporation to be granted them by the
said legislature; [to make such arrangements and agreements
as they should see fit for the obtaining the same.]

That the plaintiff, being a Judge of the Supreme Court,
and member of the Council of Revision, and the said *J. R.*
*V.* being a representative of the county of *Columbia*, in the
House of Assembly, and the said *Williams*, were strenuous
advocates for the granting of such act of incorporation.

That [on the 1st of *February*, 1812, after the prosecuting
of the said petition, and before the passing of the act of
incorporation,] a certain arrangement, agreement, or con-
tract, was made and entered into, by and between *Williams*,*
*Newbold, and Post, or one of them*, (16) so acting as the
agent or agents of the said applicants or petitioners, by
which it was stipulated and agreed, that in the event of the
passing of the law incorporating the said petitioners, upon
the terms mentioned in their application, or on equally ad-
vantageous terms, that the *Bank of Columbia*, of which
*Williams** was a stockholder and director, should be enti-
tled to claim and receive from the *Bank of America*, when
incorporated, an advance or credit to the amount of 150,000
dollars, to be lent and advanced as the same should be re-
quired by the *Bank of Columbia*, for, and during a long term
or period of years, to commence after the *Bank of Ame-*
*rica* should be incorporated, to wit, for the term of fifteen
years ; and it was further agreed by and between *Williams**
and the said *Newbold* and *Post, or one of them*, (16) that on
all, or every sum or sums of money that should, after the
*Bank of America* should be incorporated, be loaned or

continued in advance to the *Bank of Columbia*, by the *Bank of America*, by virtue of the said arrangement or contract, the *Bank of America* should retain for their own use and benefit, and as for the interest on such advances, the sum of three per cent. per annum, and no more.

That the contract or arrangement made as aforesaid, between *Williams** and the said *Newbold and Post, or one of them*, (16) *was corruptly made, with the intent and design* of promoting and procuring the incorporation of the *Bank of America*, by obtaining and securing the aid, influence, and services, in and about the soliciting and procuring the granting of the act of incorporation, of the said *Williams,** and of such other person or persons as then were, or might thereafter become interested with him, in the execution or fulfilment of the said arrangement or contract, and then were, or might thereafter become entitled to a share of the pecuniary benefits or advantages which *W.** intended and expected to derive and receive from the execution and fulfilment of the said arrangement or contract, and which it was meant and designed to secure.

That at the time of making the said arrangement between *Williams* and the said *Newbold and Post, or one of them*, or shortly thereafter, and before the passing of the act of incorporation, it was understood and agreed between the plaintiff, *W.*, and *V. R.*, that in the event of the passing of such act of incorporation, and in case the said arrangement or contract should be ratified and carried into effect by the *Bank of America*, the plaintiff [and *V. R.*] should [each of them] be entitled to claim and receive, one equal third part of the pecuniary benefits and advantages which *Williams** intended and expected to receive from the execution of the said arrangement or contract, and which it was meant and intended to secure.

That the *influence of the talents and standing of the plaintiff, W., and V. R. was most openly exerted* (17) to promote the granting of the said act of incorporation, and that, notwithstanding much opposition to the said application, and notwithstanding that the legislature had been prorogued by the governor, *on the express ground that corrupt practices had been made use of to carry through and procure such act*

*of incorporation*, (3) yet the said applicants were consti-
tuted a body politic, &c.    That both before and after the
prorogation of the legislature, corrupt means were used
and employed *by the said applicants and petitioners, or some
of them, and by the agents aforesaid, or one of them, to pro-
cure from the legislature the act of incorporation aforesaid,*
that is to say, &c. as in the first plea, between the asterisks,
except that in this plea, the corrupt means are alleged to
have been used *by the said applicants or petitioners, or their
agent or agents,* omitting *the Bank of America, or their agent
or agents.*

That on the 18th of *March*, 1813, *Williams\* did urge
and request the President, &c. of the Bank of America, to
ratify and carry into effect the said arrangement made by and
between the said Williams,\* and the said Newbold and Post,
or one of them.* (18.)    That the said *President, &c.* when so
requested and urged by *Williams,\** did decline and object
to ratify the same, and did propose and offer to *Williams* to
grant a credit to the *Bank of Columbia,* at and upon the
*Bank of America,* to the amount of 150,000 dollars, for the
term of 15 years, upon the condition that the *Bank of Ame-
rica* should be entitled to receive and retain [to their own
use,] interest at the rate of six per cent. per annum, upon
all sums of money that might, in pursuance of such credit,
be loaned and advanced, or continued in advance by the
*Bank of America,* to the *Bank of Columbia,* and did further
offer and propose to *Williams\* in consideration that Wil-
liams\* would agree to such an alteration of the terms of the
arrangement,* (18) and as a commutation in gross to the said
*Williams,\** for the pecuniary benefits and advantages in-
tended to be secured by the said arrangement, the sum of
20,000 dollars, to which offer and proposal *Williams,\** for
himself, *and on the behalf of the plaintiff, [and V. R.,]
did assent and agree.*

That the *President,&c. of the Bank of America,* did pay to
*Williams,* and he did receive from them, the said 20,000 dol-
lars, on the consideration, and for the purposes aforesaid,
and paid to the plaintiff 5,000 dollars, as his portion thereof,
and as a commutation for, and in satisfaction of, the pecu-
niary benefits and advantages to which he was considered

to be entitled, under, and by virtue of the arrangement made with *Newbold and Post*, or one of them, and under, and by virtue of the undertaking and agreement, between the plaintiff, *V. R., and W.*, in relation thereto. And the defendants aver, that the plaintiff did corruptly, and contrary to the obligations of his office, as a member of the Council of Revision, receive the sum of 5,000 dollars, in consideration of the services rendered by him, in procuring the granting of the said act of incorporation.

Tenth Plea.

The *tenth* plea, excepting the concluding paragraph, resembled the ninth, omitting, however, the passages between brackets, and inserting, at the asterisks, the name of *V. R.*, with such corresponding alterations as are required by the grammatical construction of the sentences. In the place of the preceding paragraph, it alleged that the *President, &c. of the Bank of America,* did pay to *W. and V. R. or one of them, and W. and V. R., or one of them,* (14) did receive from the said *President &c.* the sum of 20,000 dollars, on the consideration and for the purposes aforesaid, and that *W. and V. R., or one of them,* (19) did pay the plaintiff 5,000 dollars, as his portion of the money, received by *W. and V. R.,* from the *B. of A.,* and as a commutation for and in satisfaction, &c. as in the preceding plea.

Demurrer.

The plaintiff demurred specially to all the pleas, assigning a number of causes of demurrer, which, as far as the pleas are similar, are the same to each. They are here stated with reference to the figures by which the parts demurred to have been designated in the pleas.

(1.) That the defendants have not shown by whom, by name, the application for an act of incorporation was made and presented to the legislature, nor the agents, by name, sent and despatched to procure the same, nor the persons, by name, by whom they were sent and despatched.

(2.) That it is not set forth who such agents were, or what corrupt means in particular had been used and employed, and that the plaintiff had knowledge thereof.

(3.) That it is not set forth what corrupt practices, if any in particular, had been used, and that the plaintiff had knowledge thereof.

ALBANY,
January, 1322.

VAN NESS
v.
HAMILTON.

(4.) That it is not set forth, by name, who the applicants, petitioners, agent or agents, were, and to whom, by name, the sum of *other* 250,000 dollars was paid, or caused to be paid, and that the plaintiff had knowledge of either of the said payments, and the purpose thereof.

(5.) That it is not set forth, by name, by and to whom such payments were made, and sums of money used, and that the plaintiff had knowledge thereof.

(6.) That it is not set forth, by name, by whom, and to and against whom such offers and attempts to pay, hire, bribe, and corrupt, &c. were made, and that the plaintiff had knowledge thereof.

(7.) That the persons are not set forth, by name, by whom the promise to grant a credit to the *Middle District Bank,* was made, or that the influence to be secured was an unlawful and corrupt influence, or that the plaintiff had any knowledge of such promise, or of the purport thereof.

(8.) That it is not set forth, by name, by and to, or with whom the payments of, or agreements to pay, lend, and advance *divers other large sums of money* were made, or the sums of money in particular, or that the services rendered, or to be rendered, were unlawful or corrupt, or that the plaintiff had any such knowledge of such payments, promises, or agreements, or of the consideration or purposes thereof.

(9.) That it is not set forth particularly, by name, by and with whom the *various other corrupt, improper, and unlawful means* were used or employed, and what in particular such means were, or that the plaintiff had any knowledge thereof.

(10.) That the defendants have not alleged that the plaintiff was a director or stockholder, or had any interest in the stock, or otherwise, of the *Bank of Columbia.*

(11.) That it is not set forth, by name, by whom the promises or agreements in relation to the credit to the *Bank of Columbia* were made, or, directly, certainly, and positively, with whom, and for whose use and benefit the same were made, or that such promises and agreements were unlawful or corrupt.

(12.) That it is not set forth, certainly and positively, and

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

by name, by or with and between whom, and by what authority such agreement or arrangement was made and entered into, or by whom the same was submitted to the Board of Directors, or by which of the directors the same was opposed; or that the said sum of 20,000 dollars was paid to or received by, and the offer of the Board of Directors on condition, &c., accepted and accceded to by *Williams*, by authority from the plaintiff, or that such offers, condition, acceptance, or payment, were unlawful or corrupt.

(13.) That it is not set forth who *such fourth person* was.

(14.) That it is not set forth, by name, who the applicants or petitioners for the act of incorporation were, or any fact upon which the plaintiff's hope, expectation, and belief of being rewarded, was founded.

(15.) That it is not set forth, by whom, by name, the application for an act of incorporation was made and presented to the legislature, nor the persons, by name, by whom the agents were sent and despatched.

(16.) That it is not set forth, certainly and positively, with which of the agents the agreement in relation to the credit to the *Bank of Columbia*, was made and entered into, or that the plaintiff had any knowledge thereof, or of the intent or design thereof.

(17.) That it is not set forth that the influence exerted by the plaintiff, *W., and V. R.* was unlawfully or corruptly exerted by either of them.

(18.) That it is not set forth in certain, by and with what agent the agreement urged and requested to be ratified was made, or that the plaintiff had authorized such request or such consent and agreement, to such offer or proposal, or that such request, offer, or proposal, consent, or agreement, were unlawful and corrupt.

(19.) That it is not set forth, certainly and positively, to which of them, the said *W.* and *V. R.*, the payment of the sum of 20,000 dollars was made, or by which of them the sum of 5,000 dollars was paid to the plaintiff.

Joinder in demurrer.

*Henry* and *T. A. Emmet*, in support of the demurrer. They cited, 1 *Term Rep.* 748. 2 *Chitty's Pl.* 50. 1 *Saund.*

244. note (6.) *Newman* v. *Bailey*, cited in *J'Anson* v. *Stewart*, 1 *Term Rep.* 750.  1 *Chitty's Pl.* 205, 206. 235. 509, 510.  5 *Comyn's Dig. Pleader E.* 4.  2 *Selw. N. P.* tit. *Slander*, 1163.  6 *Term Rep.* 691.  1 *Chitty's Pl.* 238. n. t. *Chitty's Crown Law*, 169. 171, 172, 173. 175. 211. 227, 228, 233. 236.

*J. Duer* and *Van Buren*, contra.  They cited, 1 *Saund.* 243, 244.  *Co. Litt.* 303. *b.*  2 *Saund.* 411. n. 4.  5 *Bac. Abr.* 403.  1 *Chitty's Pl.* 240.  1 *Term Rep.* 753. 2 *Johns. Rep.* 416.  1 *Lutw.* 421.  3 *Raym.* 8.  *Cro. Eliz.* 749. 916.  1 *Term Rep.* 743.  *Comyn's Dig.* *Plead. E.* 10. G. 31. *Cro. Eliz.* 112.  *Co. Litt.* 303. *a.* *Yelv.* 17.  *Plowd.* 85. *Lord Raym.* 804. 2 *Johns. Rep.* 415.  *Salk.* 139. *S. C. Lord Raym.* 478.  1 *Term Rep.* 752.  *Cro. Eliz.* 112. 8 *Term Rep.* 459.  5 *Johns. Rep.* 172.  3 *Chitty's Pl.* 521. 8 *East.* 80.  4 *Wentw. Plead.* 2. *Comyn's Dig. Plead. O.* 42. 1 *Wheat. Rep.* 11. 14.  3 *Wheat. Rep.* 329. 560. 121. 9 *State Trials*, 623. *Lord Somers' Case*, 6 *State Trials*, 476.

SPENCER, Ch. J. delivered the opinion of the Court.  It is not requisite to state the declaration or the pleas.  Such parts of them as are necessary to be considered, will be noticed.  But before I consider the particular objections to the pleas pointed out by the special demurrers, it will be proper to advert to some well-established principles, in relation to pleas in bar, in actions for defamatory words, or libellous charges.

It may, however, be observed, in the outset, that there exists a decided distinction between words spoken, and written slander.  To maintain an action for the former cause, the words must either have produced a temporal loss to the plaintiff, by reason of special damage sustained from their being spoken, or they must convey a charge of some act criminal in itself, and indictable as such, and subjecting the party to an infamous punishment, or they must impute some indictable offence involving moral turpitude.  To maintain an action for a libel, it is not necessary that an indictable offence should be imputed to the plaintiff.  If a libel holds a party up to public scorn, contempt, and ridicule, it is actionable.  (9 *Johns. Rep.* 214.  7 *Johns. Rep.*

264.) It has not been controverted by the defendants'
counsel, that the publication complained of is libellous, if
untrue. It contains grave charges against the plaintiff, of
prostituting the high and dignified office of a Judge of
the Supreme Court, and, as such, *ex officio*, a member of
the Council of Revision, to base and mercenary purposes,
utterly incompatible with his duty to the public.

A plea in bar of the plaintiff's action, must be certain to
a common intent; it must be direct and positive in the facts
set forth, and must state them with all necessary certainty.
It is not correct to say, that in a plea justifying a libel, be-
cause the subject comprehends multiplicity of matter, there
may be general pleading, to avoid prolixity. In 1 *Chitty's
Pl.* 240. 516., the true rule will be found ; a rule frequently
sanctioned in this Court, and adjudicated in the Court for
the Correction of Errors. (11 *Johns. Rep.* 573.) The
rule to which I allude is laid down in the case of *J'Anson*
v. *Stuart.* (1 *Term Rep.* 748.) There the action was for
a libel, charging the plaintiff with being connected and con-
cerned with a gang of swindlers and common informers.
The plea stated, that the plaintiff had been dishonestly
concerned and connected with, and was one of a gang of
swindlers and common informers, and had, also, been guilty
of defrauding divers persons with whom he had dealings
and transactions. On demurrer to this plea, it was decided,
that it was bad, on account of its generality ; that it was
contrary to every rule of pleading, to charge the plaintiff
with swindling, without showing any instances of it ; for,
wherever one person charges another with fraud, he must
know the particular instances on which his charge is found-
ed, and, therefore, ought to disclose them. *Ashhurst*, J.
said, one part of the defendant's argument had been, that
the plea is only as general as the charges in the declaration.
He said, it was to be observed, that it was the charge of the
defendant, and the plaintiff was bound to state it as made,
and that it did not follow that the defendant ought to justify
in so general a way; that when he took upon himself to
justify, generally, the charge of swindling, he must be pre-
pared with the facts which constitute the charge, in order
to maintain his plea, and then he ought to state those facts

specifically, to give the plaintiff an opportunity of denying them, for the plaintiff could not come to the trial prepared to justify his whole life.    That if the defendant could support his charge, it must be known to him, and he must call witnesses to prove particular acts of fraud, and if he could not substantiate the charge, he ought not to have made it. *Buller*, J. said, that if the plaintiff had been guilty of any acts of swindling, the defendant must be supposed to know them ; that the defendant had no justification, unless he could prove the special instances, and knowing them, he ought to put them on the record, that the plaintiff might be prepared to answer them.    Both Judges, *Buller* and *Ash-hurst*, refer to cases of indictment for barratry, keeping a disorderly house, and as a common scold, and declare them to be peculiar cases, supported by peculiar reasons, but not applicable to the case then under consideration. *Buller*, J. states the rule in pleading to be, that wherever a subject comprehends multiplicity of matters, in order to avoid prolixity, generality of pleading is allowed ; but, he says, if there be any thing specific in the subject, though consisting of a number of facts, they must all be enumerated.    I have been thus particular in stating the doctrine advanced by the Judges in the case of *J'Anson* v. *Stuart*, for no case has fallen under my observation impugning the principles there laid down.    It would be an alarming doctrine to maintain, that one man might charge another with stealing, generally, and then, by way of justification, plead merely that he was a thief, and had stolen ; or that he had stolen from *A.* or *B.* or *C.*    Such a plea would be condemned by every sound lawyer, as falling far short of a justification.    A material and traversable fact must be expressly stated. (2 *Johns. Rep.* 433.    3 *Johns. Rep.* 242.    7 *Johns. Rep.* 75.)

It is another rule in pleading, that when the plea professes to be a plea to the whole declaration, and omits to answer a material part of it, it is bad on demurrer.    (11 *Johns. Rep.* 573. *In Error.*)

I consider the first plea bad, in omitting to state, that the plaintiff was a stockholder, or interested in the *Bank of Columbia*.    That fact was alleged in the libel, and it was obviously so alleged, to induce a belief, that the plaintiff advo-

cated the incorporation of the *Bank of America* from inte-
rested motives, arising out of the agreement relative to the
loan to be made by the *Bank of America* to the *Bank of
Columbia.* But the great and striking defects of the plea,
are those pointed out in the 11th and 12th causes of de-
murrer. The plea is bad in stating, *that the agreement was
made with the plaintiff, E. Williams, or J. R. Van Rensselaer,
or to or with one or more of them, on behalf of himself or
themselves, on the behalf of the other or others of them.* It
leaves the fact unassisted, and uncertain, whether the plain-
tiff was a party to the agreement. It offers no issuable
point, for if the plaintiff had replied that he never made, or
assented to any such agreement, and was no party to it, the
replication would be no answer to the plea, for the fact was
not positively asserted in the plea. With respect to the
three per cent. or the one half of the interest, payable by
the *Bank of Columbia* to the *Bank of America,* which the
libel states was to be paid by the *Bank of America* to the
plaintiff, *E. Williams* and *J. R. Van Rensselaer,* the plea sets
forth that it was to be paid to the plaintiff, *Williams,* and
*Van Rensselaer, or to some, or one of them, for the use and
benefit of himself or themselves, or for the other or others of
them;* thus leaving it altogether uncertain which of the
three was to receive this interest. The fact thus pleaded
is not traversable, and it is impossible to reconcile the plea,
in this respect, with any principle of pleading. It is no an-
swer to the libel, and does not, absolutely and necessarily,
implicate the plaintiff at all.

That part of the plea objected to by the 12th cause of
demurrer, is equally vicious. It does not state that *Wil-
liams* had any authority from the plaintiff to enter into the
negociation, and to receive the 20,000 dollars. The plea
states the offer made by the *Bank of America* to give the
20,000 dollars ; and that it was acceded to, and accepted
by *Williams,* on the part and behalf of himself and the plain-
tiff, and *Van Rensselaer ;* but it does not assert and state, as
it ought, that the plaintiff had authorized *Williams* to enter
into that negociation in his behalf, and to make the com-
promise. For, even supposing that *Williams* represented
himself as authorized by the plaintiff, and the *Bank of Ame-*

*rica* had paid the money on that supposition, the plaintiff was entitled to have the fact stated that it was by his authority, for no man ought to be implicated by the acts or declarations of a third person. He has a right to have the fact so pleaded as to take issue on the point, whether the person professing to act as agent, was such in reality.

The defendants having made the charge, that the plaintiff, a member of the Council of Revision, did receive money for services rendered in procuring the incorporation of the *Bank of America,* were bound to show it in their justification; not in the words of the charge, but by stating the facts with sufficient certainty, which should make out the charge, so that the plaintiff might be enabled to take issue on the very fact. (1 *Chitty's Pl.* 519.)

With respect to the irrelevant matters set forth in the plea, in no respect affecting the plaintiff's conduct, it is a rule, that matters of inducement need not be stated with as much certainty, as other parts of pleading, because they are seldom traversable. (1 *Chitty's Pl.* 596.) In the present case, however, there are many irrelevant facts introduced into the plea, for no conceivable purpose whatever; and I do think, such pleading ought to be discountenanced, as tending to the very prolixity which the defendants' counsel contend against; and to avoid which they have urged a relaxation of the well established rules of pleading. Upon the subject of prolixity in pleading, how it may be avoided, and how far the Courts of law will tolerate general pleading, the whole subject is discussed by Sergeant *Williams,* in 1 *Saund.* 243, 244. *in the notes;* and it will be seen that the admission of generality in pleading, was never applied to a case like this.

With respect to the import and meaning of the libel, the principle laid down in the Court for the Correction of Errors, by *Van Buren,* Senator, (11 *Johns. Rep.* 593, 594.) is this: that it is not necessary, that the libel, in plain and express terms, should charge criminality; but that if it necessarily implicates the conduct of the party concerned, it is libellous; and he, very properly and emphatically, said, that the contrary doctrine, "added to the acknowledged licentiousness of the press, would form a rampart from be-

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

hind which the blackest scurrility and the most odious cri‑ minations might be hurled on private character with im‑ punity, and would, indeed, render the press both a public and private curse, instead of a blessing." I fully assent to this proposition.

The 2d, 3d, 4th, 5th, and 6th pleas are liable to the same objections, which have been shown to exist as to the first plea. It cannot be necessary to recapitulate them. Those pleas are all substantially the same, the variance between them being minute and unimportant ; and they are all bad. The 7th plea is, also, bad, for some of the reasons applica‑ cable to the first plea ; but a cause of demurrer peculiar to this plea is, that the plea alleges, that the plaintiff used and exerted the influence of his talents and standing, to pro‑ mote the passing of the act incorporating the *Bank of Ameri‑ ca, under and with the* hope and expectation of being compen‑ sated and rewarded, for his services in the premises, by the applicants for the incorporation, in case of the eventual success of their application. This allegation is bad for two reasons : *first,* because it is impossible to take issue on the fact, for it is not susceptible of trial. The plea states no fact on which that hope or expectation could be found‑ ed ; and instead, therefore, of a trial of facts, the inquiry would be into the secret operations of the mind and thoughts of the plaintiff ; and I will venture to say, that such a plea is without a precedent, An act, it is true, may be done with a particular intent, and the intent may render the act criminal ; but, in such a case, the intent is demon‑ strated by the act, and the circumstances under which it was done ; as in the case of an assault and battery with in‑ tent to murder. But the case presented by the plea is en‑ tirely different ; the acts do not necessarily manifest the intent imputed, and the intent is not necessarily connected with the acts ; and, *secondly,* if one man charge another with having committed a particular felony, would a plea stating a disposition and intention to commit the felony be any answer to the charge ? And that is precisely this case.

The 8th plea stands in the same predicament, and is liable to all the objections, pointed out as to the 7th plea.

The 9th plea sets forth an agreement made between *E.*

*Williams, George Newbold,* and *Henry Post, Jun., or one* of them, as agents for the petitioners for the incorporation of the *Bank of America,* whereby the *Bank of Columbia,* in the event of the incorporation of the *Bank of America,* upon the terms and conditions set forth in their petition, or on terms equally advantageous, should have an advance from the *Bank of America,* to the amount of 150,000 dollars, for fifteen years, at three per cent. on such amount as should be continued in advance ; that such agreement was corruptly made to secure the influence of *Williams,* and of such others as might be interested in the fulfilment thereof, or in the benefits *Williams* expected to derive from the contract. It then states, that at the time of making the contract, or shortly thereafter, and before the passing the act incorporating the *Bank of America,* it was understood and agreed, between *Williams,* the plaintiff, and *Van Rensselaer,* that if the act passed, and in case the said agreement should be ratified and carried into effect by the *Bank of America,* the plaintiff and *Van Rensselaer* should be entitled to receive one third part of the pecuniary benefits which *Williams* expected to receive under the agreement; that the plaintiff and *Van Rensselaer* openly exerted their influence, &c. to promote the incorporation, and that the *Bank of America* was incorporated. The plea then states the employment, by the agents of the *Bank of America,* of improper means with other persons, and then the final arrangement between *Williams* and the *Bank of America,* whereby he received 20,000 dollars, as an equivalent and compromise of the agreement with the agents ; and that *Williams,* for himself, and on the behalf of the plaintiff and *Van Rensselaer,* assented to the proposition made by the *Bank of America,* to pay 20,000 dollars ; and, thereafter, paid the plaintiff 5,000 dollars thereof, to which the plaintiff was considered to be entitled under the agreement made with *Newbold* and *Post, or one* of them. The plea then alleges, that the plaintiff, corruptly, and contrary to the duties of his office, as a member of the Council of Revision, received the said 5,000 dollars, for, and in consideration of the services rendered by him, in procuring the act of incorporation of the *Bank of America.*

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

ALBANY,
January, 1822.

VAN NESS
v.
HAMILTON.

This plea professes to answer all the counts in the declaration, and to answer every part of those counts; but it contains an answer only to a part of the libellous publication. It is, therefore, bad on demurrer. (11 *Johns. Rep.* 593. 1 *Chitty*, 509, 510. 1 *Saund.* 244. n. 6., and the cases there cited.) The material part of the libel unanswered, relates to the agreement imputed to the plaintiff, to receive, together with *Williams* and *Van Rensselaer*, the three per cent., being one half of the six per cent., payable by the *Bank of Columbia* to the *Bank of America*, in consideration of the loan and credit of 150,000 dollars. It omits, too, to state, that the plaintiff was a stockholder, or interested in the *Bank of Columbia*; and it omits all mention of the annual bond to be given by the *Bank of Columbia* to the *Bank of America*, and of the personal bond to be given by the plaintiff, *Williams*, and *Van Rensselaer*.

This plea does not state, that the plaintiff, as a member of the Council of Revision, voted for the bill incorporating the *Bank of America*, and it does not impute to the plaintiff any unlawful or corrupt act, whereby he was to be entitled to one third of the 20,000 dollars. Although it does impute highly unbecoming conduct, yet it falls far short of the charge in the libel. There are various other special causes of demurrer to this plea, which are well taken, but which are formal and technical.

The 10th plea is bad, for the reasons assigned as to the 9th plea; and it is bad, also, for uncertainty, in not setting forth, specifically, who paid the 5,000 dollars to the plaintiff. The plea alleges, that the 20,000 dollars was paid to *E. Williams* and *J. R. Van Rensselaer, or one of them;* and that the said *E. Williams*, and *J. R. Van Rensselaer, or one of them,* paid to the plaintiff 5,000 dollars, &c. For the reasons already given, this mode of pleading is bad. Both of the last pleas are further objectionable, in omitting to state, that *Williams*, or *Williams* and *Van Rensselaer* together, were authorized by the plaintiff to make the arrangement with the *Bank of America*, for the payment of the 20,000 dollars.

I have thus examined all the essential parts of the pleas as applicable to, and professing to answer the declaration.

The pleas are so voluminous, that some facts may have been overlooked, but this cannot be material ; for if the defendants elect to plead anew, the pleas must conform to the principles which I have laid down, and which all my brethren approve. We mean to be understood, that we consider the pleas materially and radically bad, in the several particulars pointed out. They may be formally bad in some respects not adverted to. I mention this, that, hereafter, no conclusions may be drawn in favour of the validity of such parts of the pleas as have not been noticed. There must be judgment for the plaintiff, with leave to the defendants to amend, on payment of costs.

*ALBANY,*
*January, 1822.*

Judgment for the plaintiff, accordingly.