Burton *v.* Burton.

BURTON *v.* BURTON.

In slander words are in themselves actionable, if being true they would subject the party charged to an indictment for a crime involving moral turpitude or infamous punishment.

Where the declaration charges actionable words to have been " published of, and concerning the plaintiff," it is not necessary to allege that they were spoken in the presence of some person.

### ERROR *to Dubuque District Court.*

*Opinion by* KINNEY, J.   The plaintiff in error sued the defendant in an action on the case for slanderous words spoken.   The declaration charges that the defendant on or about the 29th day of June, 1850, uttered and published in the hearing of sundry persons the following false and slanderous words of, and concerning, the plaintiff, to-wit: "My cow"—meaning said defendant's cow—"died last night." That damned rascal Bob—meaning plaintiff—poisoned her last night.   Bob Burton—meaning said plaintiff—poisoned my cow last night, and she is dead."   Thereby meaning that said plaintiff had been guilty of maliciously killing his, defendant's, cow.   The second count in the declaration also charges that in July, 1850, the said John Burton, defendant aforesaid, did utter and publish the following false and scandalous words, to-wit: " He—meaning the said plaintiff—stole my lead.   Bob—meaning said plaintiff— stole my lead "—meaning his, said defendant's, lead.   The defendant demurred to this declaration, and for special cause of demurrer assigned the following: 1st. The words, in manner and form as set forth in the first count, are not actionable.   2d. There is no allegation in the second count that the words alleged to have been spoken by the defendant, were spoken in the presence or hearing of any person.

The decision of the court sustaining the demurrer is assigned for error.   The question arising under the first

Burton *v.* Burton.

count of the declaration is, were the words charged to have been spoken by the defendant actionable. By our statute, if a person maliciously, wantonly, wilfully, or unlawfully wounds, disfigures or destroys any horse, ox, steer, bullock, cow, heifer or calf, he is liable to be indicted, fined and imprisoned. Rev. Stat. 187, § 15. The words charged to have been spoken by the defendant of and concerning the plaintiff, impute to him a crime under this statute, which, if true, is punishable by imprisonment on indictment and conviction. Much uncertainty has existed in the law as to when words in themselves are actionable. Various and conflicting decisions are to be found on this subject. But we believe the true rule, by which to test whether defamatory words are actionable *per se*, is to be found in the case of *Brooker* v. *Coffin*, 5 John. R. 188. In this case it is held that if the charge being true will subject the party charged to an indictment, for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable.

In the case of *Widring* v. *Oyer*, 13 John. 124, the court mention with approbation the rule laid down in 5th John, and say, " the words were clearly actionable within the rule laid down in *Brooker* v. *Coffin*, which we consider as affording the best criterion for determining whether words spoken are actionable or not. In the case of *Van Ness* v. *Hamilson* 19 John. 349, the same doctrine is maintained. And in a much later case, that of *Young* v. *Miller*, 3 Hill, the rule as laid down in the case of *Brooker* v. *Coffin* is repeated and followed, and a number of authorities in support of it, cited. In all of these cases the court went upon the ground that the words imputed a crime " involving moral turpitude," and for which the offender might be proceeded against by indictment. Governed by this well defined rule, we have no difficulty in coming to a satisfactory conclusion in relation to the first count in the declaration. The

plaintiff is charged with having poisoned the defendant's cow whereby she died. This is not only an indictable offense, but also imputes to the plaintiff a degree of moral turpitude which would render him disgraceful and morally infamous in the estimation of all worthy neighbors and citizens. There is more moral turpitude exhibited in the commission of a crime of this kind, than in one of a higher *legal* grade, and hence the accusation of it may render a man more infamous in the estimation of the public.

Homicide may be committed in the heat of sudden passion. Larceny from some supposed imperious call of nature. Perjury for the sake of shielding some friend from merited punishment. And in this higher grade of legal crimes, many circumstances may exist as palliations of moral guilt in the public mind; but no circumstances can possibly extenuate the moral turpitude of that wretch who will poison his neighbor's horse or cow. The crime charged in the first count being indictable, and involving moral guilt, the words *per se* were actionable; consequently the count was a good one, and the demurrer to it should not have been sustained. It is admitted that the words in the second count are actionable, but it is contended that the plaintiff should allege the words to have been spoken in the presence of some person.

The count charges that the defendant uttered and published of and concerning the plaintiff, that he, the plaintiff, stole his, the defendant's, lead. The defendant might have uttered the defamatory words in *secret*, but we are at a loss to know how he could have published them unless he did so to, or in the presence of some one or more persons. Publishing is defined, by an able lexicographer, to be, "making known, divulging, proclaiming." The very charge of publishing presupposes public utterance, and the additional allegation that the words were published in the presence of divers persons, would have been surplusage. The

.count is good and the demurrer should have been overruled.

*Geo. S. Nightengale* and *T. S. & D. S. Wilson* for plain-tiff in error.

*P. &.J. M. Smith,* for defendant.