(173 App. Div. 618)

PEOPLE ex rel. PLANCON v. PRENDERGAST, City Comptroller.

(Supreme Court, Appellate Division, First Department.    July 10, 1916.)

1. COUNTIES ⬤➞63—BOARD OF ESTIMATE AND APPORTIONMENT—CONTROL OF COUNTY SALARY EXPENDITURE.

A county clerk is a county officer, and the power to make appointments and promotions of his subordinates, subject to the Civil Service Law of the state (Consol. Laws, c. 7), is necessary to the proper discharge of his duties, and the board of estimate and apportionment exceeded its powers by attempting, by resolution, to control the spending of the board of aldermen's salary appropriation for general clerks of the county clerk's office, by requiring its own certificate of approval as to the filling of vacancies to occur in the future, and by refusing to audit the salary account of a general clerk, promoted by the county clerk to a clerkship carrying a higher salary upon a vacancy occurring, instead of reducing the general estimate for general clerks.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 87–90; Dec. Dig. ⬤➞63.]

2. COUNTIES ⬤➞162—BOARD OF ESTIMATE AND APPORTIONMENT—LIMITING EXPENDITURES.

A reduction in the total appropriation asked for by the county clerk for salaries of his subordinates is a proper exercise of the power of the board of estimate and apportionment in the direction of limiting expenditures.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 221, 222; Dec. Dig. ⬤➞162.]

3. COUNTIES ⬤➞70—CLERKS—REFIXING SALARY OF SUBORDINATE.

The county clerk, by promoting a general clerk in his office from a clerkship carrying a salary of $1,000 a year to a clerkship carrying a salary of $1,200 a year, to fill a vacancy, did not attempt to refix the promoted clerk's salary, and caused no change in the salaries fixed and the budget as adopted by the board of aldermen, since no individual is named in the budget as having a specified salary; the budget specifying only the positions, their number, and the salaries attached thereto.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 104–113, 115–117; Dec. Dig. ⬤➞70.]

4. COUNTIES ⬤➞70—COUNTY CLERK—RIGHT TO FIX SALARIES OF SUBORDINATES—STATUTES—"PAID OUT OF THE CITY TREASURY."

Under Laws 1884, c. 295, regulating the expense of the county clerk's office, as amended by Laws 1914, c. 90, permitting the county clerk to appoint a counsel, despite Greater New York Charter (Laws 1901, c. 466) § 56, as amended by Laws 1902, c. 435, providing that the board of aldermen, on recommendation of the board of estimate and apportionment,

⬤➞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shall fix the salary of every person whose compensation is paid out of the city treasury, the right to fix the salaries of his subordinates, such as a general clerk in his office, still remains in the county clerk, as the salary of such a clerk is paid out of the county treasury; the words "paid out of the city treasury," as used in section 56, meaning paid out of funds raised for city purposes, as distinguished from funds raised for purely county purposes.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 104–113, 115–117; Dec. Dig. ☞70.]

Appeal from Special Term, New York County.

Application for mandamus by the People, on the relation of George E. Plancon, against William A. Prendergast, as City Comptroller. From an order granting a peremptory writ, defendant appeals. Order affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

E. Crosby Kindleberger, of New York City, for appellant.
James A. Donegan, of New York City, for respondent.

DAVIS, J. The court at Special Term granted an application for a peremptory writ of mandamus to compel the comptroller of the city of New York forthwith to audit and certify for payment the pay roll of the county clerk's office for the last half of March, 1916, which pay roll contained the name of the relator, with a designated salary of $1,200 a year, as a general clerk. The city budget for 1916 was duly adopted by the board of estimate and apportionment and approved by the board of aldermen. It contained an appropriation of $161,067.85 for the expenses of the county clerk's office for 1916, and specified in detail $36,000 for salaries of 30 general clerks at $1,200 a year and $4,000 for the salaries of 4 general clerks at $1,000 a year. On February 15, 1916, one Cunningham, who held one of the 30 general clerkships at $1,200 a year, resigned, thereby creating a vacancy in this group of general clerkships, and to this vacancy the county clerk, with the consent of the state Civil Service Commission and in accordance with the Civil Service Law, appointed the relator, George E. Plancon, who theretofore was a general clerk at $1,000 a year and in the same grade as Cunningham.

On March 24, 1916, the payroll of the county clerk's office for the last half of the month of March, 1916, duly certified by the officials in the county clerk's office and the state Civil Service Commission, was transmitted for certification and audit to the comptroller of the city of New York, who refused to certify it as to the name of the relator, and consequently the relator is still without salary for the services performed for the period indicated. The comptroller refused to certify this payroll on the ground that it failed to show that the county clerk had complied with the terms of the budget as finally adopted. It appears that the budget referred to was adopted with the following provisions:

"Resolved: * * * (C) That vacancies existing on January 1, 1916, or occurring thereafter in schedules supporting appropriations in this budget for 'Salaries, Regular Employés,' or for 'Salaries, Temporary Employés,'

shall be filled only after certificate by duly authorized representatives of the board of estimate and apportionment (1) that the position is required; (2) that the title and compensation for such vacant position conform to the standard titles, work, specifications, and compensation grades fixed by the board of estimate and apportionment where there has been such fixation; or (3) in the event of there having been no such fixation by the board of estimate and apportionment, that the title and compensation for such vacant position are apparently proper."

It also appears that, in order to facilitate the issuance of the certificates referred to in the above resolution, the board of estimate and apportionment authorized its committee on salaries and grades to consider applications for and to make the required certificates. In the case at bar it is conceded that the county clerk appointed the relator without having applied for or obtained the certificate of the board as provided in the above resolution (C).

The specific grounds of the comptroller's refusal to certify this pay roll are stated by him substantially as follows: That the committee on salaries and grades of the board of estimate and apportionment has never issued the certificate required under the provision of paragraph C (referring to the resolution above mentioned), stating that the position of the clerk in the office of the clerk of the county of New York at a salary of $1,200 per annum, to which George E. Plancon is sought to be appointed in place of Richard L. Cunningham, resigned, is required, and that the title and compensation of the vacant position are apparently proper, and neither the clerk of the county of New York nor any one acting for him has ever requested the board of estimate and apportionment or its committee on salaries and grades to issue such certificate. In effect, this amounts to saying that the county clerk is powerless to make an appointment or promotion to fill a vacancy occurring in the position of clerk without first applying to and securing from the board of estimate and apportionment or its committee a certificate permitting him to make such appointment or promotion.

On the other hand, the relator contends that the board of estimate and apportionment cannot control or limit in this manner the power of the county clerk to appoint his subordinates; that the board of estimate and apportionment, with the approval of the board of aldermen, having made appropriations for the payment of the expenditures of the office of the clerk of the county of New York, including the salary of the position to which the relator was appointed, the county clerk has the right to fill the designated positions in his office by appointment and promotion, provided he complies with the Civil Service Law of the state and the rules and regulations of the state Civil Service Commission, and so long as he does not exceed the total annual appropriation made for the use of his office in the budget; that the resolution (C) annexed to the budget purports to impose a condition on the filling of vacancies, and not on the expenditure of the moneys appropriated, and is therefore without authority of law so far as the office of the county clerk is concerned.

Thus one of the important questions to be decided on this appeal is whether the board of estimate and apportionment has the power

thus to limit the right of the county clerk to make appointments and promotions in his office. In discussing the question thus raised we will assume for the present that the board of aldermen, upon the recommendation of the board of estimate and apportionment, has the right to fix the salaries of county employés. The resolution of the board makes the issuance of its certificate a condition precedent to the filling of vacancies in the county clerk's office, and such is the view of the defendant as set forth in his affidavit. The purpose and effect of the resolution are to give the board the right to determine whether the needs of the county clerk's office require the filling of the vacancy, and to compel the county clerk to refrain from filling it in case the board refuses to issue its certificate. Thus if the county clerk, in the exercise of his judgment, decided that the needs of his office require that certain vacancies therein for which appropriations have been made should be filled, he may not fill those vacancies without first applying for and obtaining the consent thereto of the board of estimate and apportionment. It appears from the defendant's affidavit that the consideration which prompted the passage of the resolution was the belief of the board that certain offices and departments were overmanned, and it therefore decided to correct this condition, not by reducing the number of these unnecessary officials by making the appropriation smaller than that of 1915, but, as stated by the defendant, by waiting until one or more of such positions became vacant, and then refusing to sanction the filling of the vacancy, and that "in this way considerable hardship to individuals would be avoided."

In putting into effect its economic and kindly purpose the board has exceeded its power by appropriating powers belonging to the county clerk; for, if that purpose be carried out as contemplated, it will deprive the county clerk of an essential function of his office as the head of an important branch of the government—that is, the power to select and appoint his subordinates. The county clerk is a county officer, and it was held in People ex rel. Gardenier v. Supervisors, 134 N. Y. 1, 5, 31 N. E. 322, 324, that county officers take as incident to their office "such powers as may be deemed necessary to the proper performance of their official duties."

[1] Certainly the power to make appointments and promotions of his subordinates, subject, of course, to the Civil Service Law of the state, is necessary to the proper discharge of the county clerk's duties. It will be observed that at the time of the appointment or promotion of the relator the position to which he was appointed or promoted had already been established, the salary of that position fixed, and the money to pay the salary appropriated in a final budget. The board of estimate and apportionment and the board of aldermen have adopted this budget, authorizing the county clerk to have 30 general clerks at $1,200 a year. The board must have deemed this a proper provision for the county clerk's office, or they would have cut down the number of positions by reducing the appropriation for those positions.

[2] A reduction in the total amount asked for by the county clerk would have been a proper exercise of the board's power in the direction of limiting expenditures. But, instead of reducing the total esti-

mate for general clerks, the board allowed it to remain at the same figure as before, and by resolution (C) attempted to control the spending of this appropriation by controlling the filling of vacancies by the county clerk. In a sense the power thus assumed by the board relates to the expenditure of money, a matter doubtless within its jurisdiction; but, in order to exercise that power over expenditures in this instance, it also assumed the right to overrule the county clerk and prevent him from filling vacancies in his own office. In effect the board claims an absolute control over the filling of vacancies in the county clerk's office, and thus takes from him powers which are necessary to the proper performance of his official duties.

It is the right and duty of the county clerk to determine, according to the needs of his office, whether the vacancy in question should be filled, and to act accordingly. The board has attempted in its resolution to interfere with his exercise of this power, and compel the county clerk in these matters to substitute its judgment for his judgment, and to yield to the board control over appointments in his office. To make his right of appointment of his subordinates depend upon the judgment of another body is an unauthorized deprivation of powers belonging to him as a constitutional officer. The board will not be permitted to use unauthorized means, even to carry out its proper purpose of limiting expenditures. In People ex rel. Wogan v. Rafferty, 208 N. Y. at page 456, 102 N. E. at page 582, the court says:

"Where the Constitution establishes a specified office, or recognizes its existence, and prescribes the manner in which it shall be filled, the Legislature may not transfer any essential function of the office to a different officer chosen in a different manner. Warner v. People, 2 Denio, 272, 281 [43 Am. Dec. 740]. The authority of the Legislature to regulate the duties of constitutional officers to some extent has frequently been recognized by the courts, but not to the extent of depriving them of a substantial attribute of the office. State ex rel. Kennedy v. Brunst, 26 Wis. 412 [7 Am. Rep. 84]."

If it is claimed that there is legislative sanction for the action of the board in thus assuming control of the county clerk's appointments to vacancies, the authority just cited is sufficient to dispose of that claim.

[3] The claim of the defendant that the county clerk was attempting to refix the salary of the relator is without substantial foundation. His purpose was to make a promotion after having passed upon the qualifications of the relator for the higher position. The board has sought to limit this power to the county clerk by requiring him to get its approval of his candidate as a condition precedent to promotion. This purpose of the board is clearly set forth in the affidavit of the defendant, where he states in substance that one of the matters to be investigated by the board, before issuing its certificate allowing the filling of a vacancy, was the fitness of the candidate to fill the vacancy, with its increased compensation, in view of the duties to be performed, the increased compensation, and the length of his previous service. The board thus assumes to determine the fitness of candidates for appointment and promotion. Its exercise of such power is without warrant of law and an unauthorized obstructing of the county clerk in the performance of his duties and in the exercise of his undoubted

powers. Furthermore, the budget fixes salaries for positions, and not for individuals. No individual is named in the budget as having a specified salary. The budget specifies only the positions, their number, and the salary attached thereto. The specifications to the bureau of standards, relied upon by the board in making up its budget, indicate that the board considered the salaries for positions, without reference to the particular individuals filling them. Referring to those specifications we find the following:

"II. *Basis for Rates of Compensation.* The rates of compensation which the bureau of standards recommend for the different positions are based upon the following factors:" Then follow some of the considerations which led to their conclusions, such as the market value of the particular kind of work to be performed by the incumbent of the position, and "the theory that a range of salary rather than a fixed rate should be established for the majority of positions in the city service."

It is our opinion that the promotion of the relator made no change whatever in the salaries fixed by the board and caused no variation in the budget as adopted.

[4] This contention of the defendant raises a second and more important question, and that is whether the board of aldermen has any power whatever to fix the salaries of employés in the county clerk's office. As we view the law, the right to fix the salaries of his subordinates still remains in the county clerk, notwithstanding the provisions of section 56 of the Greater New York Charter, and therefore, even if the county clerk, in promoting the relator, thereby increased his salary, it was an act well within the statutory power of the county clerk to perform. This will appear from an examination of the statute providing for and regulating the expenses of conducting the county clerk's office; that is, chapter 295 of the Laws of 1884, which the defendant quite properly concedes is still in force. But, whether admitted to be in force or not, the Legislature as late as 1914 considered it in force, as in that year it specifically amended it by allowing the county clerk to appoint a counsel. Chapter 90, Laws of 1914. Section 3 of the act of 1884 provides that:

"The number and duties of all clerks, employés and subordinates, excepting searchers, *with their respective salaries,* shall be such as the clerk of the city and county of New York shall designate and approve, subject to the revision of the said board of estimate and apportionment: Provided, however, that the aggregate expense of said salaries or any expense of said office in any year shall not exceed the total amount duly appropriated for such year by said board of estimate and apportionment for such purposes."

Section 2 of the act provides that the expenses of conducting the county clerk's office, with some designated exceptions, shall be a charge upon the county. It then requires the county clerk to submit detailed estimates of the expenses of his office for the ensuing year, and "a statement of each of the salaries of all the officers, clerks, employés and subordinates in the said office excepting searchers." The above provisions are quite definite in giving authority to the county clerk to fix salaries of his employés.

But it is claimed by the defendant that the board of aldermen has the power to fix the salaries of clerks, employés, and subordinates in

the county clerk's office by virtue of section 56 of the Greater New York Charter, as amended by Laws 1902, c. 435. Section 56 contains the following provision:

"Except as in this section otherwise provided it shall be the duty of the board of aldermen, upon the recommendation of the board' of estimate and apportionment, to fix the salary of every officer or person whose compensation is paid out of the city treasury," except, etc.

And the defendant, taking the position that the relator's salary is paid out of the city treasury, relies upon this provision to sustain his contention that the county clerk, in promoting the relator to a position with a larger salary, improperly assumed a power which belonged exclusively to the board of aldermen; that is, the fixing of the salary of a clerk in his office. The defendant assumes that the salary of the relator is paid out of the city treasury. But it is not paid out of the city treasury; it is paid out of the *county* treasury. The county of New York still has a treasury and a treasurer—the city chamberlain, who is both city treasurer and county treasurer. See sections 196 and 197 of the Charter, People v. Edmonds, 15 Barb. 529–539, and Matter of Gould, 75 App. Div. 576–579, 78 N. Y. Supp. 381. The salary of the relator is paid out of a separate fund raised by a tax levied upon the county exclusively for county purposes, and not out of any fund raised for city purposes. Greater New York Charter, §§ 900, 902, and section 230, subd. 6. The words "paid out of the city treasury," as used in section 56 mean paid out of fund raised for city purposes, as distinguished from funds raised for purely county purposes. The scope and purpose of section 56 of the charter, as it now stands, are shown in the report of the charter revision committee to the Governor of the state in December, 1900, which report was thereafter submitted to the Legislature and was followed by legislative action in the passage of chapter 466 of the Laws of 1901, amending the charter of the city. Chapter 378, Laws of 1897. The committee, after referring to the great increase in city expenditures since consolidation, largely because of the heavy increases in the charge for salaries, and after expressing its opinion that these expenditures could be materially reduced, continues as follows:

"We have therefore recommended that the powers already conferred upon the board of estimate and apportionment and the municipal assembly shall be extended, so that it shall not longer be merely within the *power* of the city legislature, but it shall also be its *duty*, to fix the salary of every person who draws pay from the city of New York. We propose to take away absolutely from every *head of department* the power to fix the salaries of his own subordinates—a power which has led to flagrant abuses in the past."

At the date of this report these subjects were covered by sections 56 and 1543 of the Charter of 1897. The then existing section 56 provided that the municipal assembly should have the power to fix the salary of any officer or person whose salary should be paid out of the city treasury, and section 1543 gave the heads of city departments the power to fix the salaries of their clerks, employés, and subordinates. It appears from the above provisions that the city legislature had the power, but it was not its duty, to fix salaries of city em-

ployés, and also that the heads of city departments had the right to fix salaries of city employés. As quoted above, the committee recommended that the law be so amended as to make it the *duty* of the city legislature "to fix the salary of every person who draws pay from the city of New York," and "to take away from every head of department the power to fix the salaries of his own subordinates." People ex rel. Stokes v. Tully, 108 App. Div. 345, 95 N. Y. Supp. 916, 1153.

The Legislature evidently accepted this recommendation of the committee and adopted sections 56 and 1543 of the charter, substantially in their present form. From these recommendations of the revision committee and the subsequent legislation it thus clearly appears that these sections 56 and 1543 of the charter were intended to apply only to persons who are in the employ of the city government. The relator is a county employé and draws no pay from the city of New York. Nor is the county clerk a head of a department of the city government. The committee therefore could not have referred to the county clerk when it proposed to the Legislature to take from heads of departments the right to fix salaries, and the Legislature, in adopting this feature of the Report included only city officers and employés within the scope of sections 56 and 1543.

Again, a consideration of the provisions of section 1583 of the Greater New York Charter shows clearly that the Legislature did not intend to include county officials and their subordinates within the purview of section 56. Section 1586 gives to the board of aldermen, on the recommendation of the board of estimate and apportionment, the power to fix the salaries of county officers in New York, Kings, Queens, and Richmond counties, if not otherwise provided for; the comptroller having the duty of auditing and paying the expenses and salaries of the county officers out of the fund raised in the counties for that purpose. It is apparent, from the fact of the adoption of this section 1583, that the Legislature considered that county officers, and necessarily their subordinates, were not subject to the provisions of section 56, that their salaries were not fixed under section 56, and that a special enactment was necessary to give the board of aldermen the power to fix these salaries. It will be observed that section 1583 refers only to county officers, and not to their subordinates or employés. Obviously it was the intention of the Legislature to exclude them from the operation of section 56, and leave unimpaired the power of the county clerk to fix salaries of his employés as provided for in chapter 295 of the Laws of 1884.

We conclude, therefore, that the county clerk has the right to promote the relator, and, even if it resulted in a refixing of his salary, it was an act quite within the power of the county clerk to perform. These words, "paid out of the city treasury," have been construed by the Special Term of the Supreme Court (Seabury, J., in People ex rel. Allen v. Metz, 61 Misc. Rep. 363, 113 N. Y. Supp. 1007), where it was held that they included none but city officers. See, also, Whitmore v. Mayor, 67 N. Y. 21.

The order appealed from is affirmed, with $10 costs and disbursements. Order filed. All concur.