In the Matter of the Application of JULIUS S. MOSKOWITZ et al., Petitioners, against FIORELLO H. LA GUARDIA et al., Constituting the Board of Estimate of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, March 23, 1944.

*Neil M. Lieblich* for petitioners.

*Ignatius M. Wilkinson, Corporation Counsel (Seymour B. Quel* and *Harry Tannenbaum* of counsel), for respondents.

RUBENSTEIN, J. Petitioners, attendants in the County Court, Kings County, seek an order requiring the respondent city officials to pay their salaries at an increased rate ($3,250) as it was included in the budget prepared under the authorization of the judges of said County Court and submitted to the City for the fiscal year commencing July 1, 1943. The county judges submitted such salaries, and petitioners assert that they are entitled to same, pursuant to the provisions of section 352 of the Judiciary Law which provides: " § 352. *Salary of attendants of county court of Bronx and Kings counties.* The salaries of the attendants and the librarian of the county court of Kings county are hereby equalized and fixed at the same amount per annum as is now paid to attendants and the librarian of the supreme court in such county. The salaries of the attendants of the county court of Bronx county are hereby equalized and fixed at the same amount per annum as is now paid to attendants of the supreme court in such county. Such compensation shall be paid monthly, out of the amount appropriated for the sup-

port of the county court in such counties, respectively, or from any other contingent fund.''

Insofar as these petitioners are concerned, respondents have refused to comply with such budget as submitted but have granted increases in reduced amounts asserting that the right of fixation of such salaries under the New York City Charter (1938) lies with the City Board of Estimate. Further objections are raised to petitioners' asserted right to maintain this proceeding and obtain relief therein, either by way of a peremptory or alternative order. It is respondents' claim that insofar as the power of the City Board of Estimate to fix the salaries is controlled by the legislative language of section 352, the interpretation thereof rests with the Board of Estimate and not with the Board of County Judges; that respondents have acted in conformity therewith by adjusting petitioners' salaries on a plane with attendants in the Supreme Court, Kings County, whose length of service is comparable to that of petitioners; that the '' equalization '' of salaries as between attendants of the two courts, specified in section 352, refers to salaries which were paid at the time the statute was enacted or re-enacted; that, assuming the county judges had the power to '' fix '' the salaries, it was defectively exercised or defectively sought to be given effect; and, finally, that petitioners are barred of the relief which they now seek because this proceeding was not brought within the four months' period prescribed in section 1286 of the Civil Practice Act.

Charter provisions recited in respondents' answer (par. 15) deal with the customary procedure of budget preparation as applicable to City departments and agencies. The City's power to fix salaries generally comes from the legislative authority conferred by section 67 of the Charter. This section contains the significant qualification that it is to be exercised '' except as otherwise provided in this charter or by statute ''.

The situation under review constitutes, in my opinion, one of the exceptions. It has been so held by our courts. In *Matter of Martin* v. *Hylan* (213 App. Div. 519) the City, under the power conferred by Charter provisions similar to those relied on in this instance, likewise challenged the right of the county judges to fix the salaries of the attendants of the Kings County Court. Mr. Justice CROPSEY, upon whose opinion at Special Term the Appellate Division affirmed, held that '' The general provisions of the Greater New York Charter do not apply because there is a special statute covering the matter (Judiciary Law, § 352).'' To like effect are *People ex rel.*

*O'Loughlin* v. *Prendergast* (219 N. Y. 377, 381); *Schieffelin* v. *Leary* (219 App. Div. 660, 665); *Matter of Gannon* v. *McGoldrick* (169 Misc. 107, 108).

Respondents argue that section 352 does not in terms give to the county judges the power to " fix " salaries, but merely provides for the " equalization " thereof, and assert that it is the function and duty of the Board of Estimate to make such " equalization " or to see that it is made in accordance with the statutory requirement.

Apart from the fact that the weight of judicial precedent is opposed to this view, it is apparent from a mere reading of the statutory language that discretionary power with respect to these salaries is not given to the City Board of Estimate, for the Legislature itself has exercised its paramount power to regulate them. The basis of regulation is the compensation of court attendants in the Supreme Court, Kings County. The latter compensation, in turn, under section 168 of the Judiciary Law, is " fixed " by the " justices of the supreme court for the second judicial district residing in Kings county, or a majority of them ". Salaries paid to court attendants of the Kings County Court are " equalized and fixed " with these (Judiciary Law, § 352).

Respondents' argument can be sustained, if at all, under the further claim which they make that the City has the duty either to " equalize " such compensation or to see that it is " equalized ".

Again such contention would seem to be met by the judicial precedent established in *Matter of Martin* v. *Hylan* (213 App. Div. 519, *supra*), which has not been overthrown and is controlling. In that case the county judges, acting under the identical statute, assumed to fix the salaries of the majority of the attendants in their court at $2,700, the then " maximum " salary paid to attendants in the Supreme Court. Other attendants in the latter court were at the time receiving salaries ranging from $2,000 to $2,200. The court in the *Martin* case upheld the right of the county judges to fix the rate of pay for their attendants at the $2,700 figure and required the City to pay same. Respondents, conceding that a salary range as indicated existed in the Supreme Court at that time, argue that the *Martin* case decision is nevertheless not in point as a precedent because the record fails to reveal that such salary range was brought to the attention of the court which rendered the decision. But even allowing that the point was not made in the papers or upon the argument, respondents' claim in this respect is with-

out force, as I see it. The case was argued and decided in the very court whose procedure was the basis of regulation. It would be carrying evidentiary technicalities to an illogical degree to say that a court is without judicial knowledge of its own administrative structure (cf. *Kelty* v. *Kaplan,* 205 App. Div. 487, 490; see also, generally, 31 C. J. S., Evidence, § 48).

It is to be noted also that under section 200 of the Judiciary Law the judges of the County Court of Kings County are given by the Legislature the power to appoint " and at pleasure remove all attendants ". Granting, as argued by respondents, that the power to appoint and even to remove does not always, or necessarily, entail the power to fix salaries, it is still a factor to be considered in striving, as we must, to ascertain the legislative purpose and intent which is all-controlling. In *People ex rel. O'Loughlin* v. *Prendergast* (219 N. Y. 377, 381, *supra*) a test was presented as to whether certain salary-fixing powers were in the Kings County Register or in the City officials. There the statute under review said that the Register might appoint and at pleasure remove certain designated clerical assistants at salaries not to exceed prescribed amounts. The Court of Appeals, in that case, held that the salary-fixing power was in the Register, stating, at page 381: " The plain implication is that the register who is to appoint them is also to fix their pay." It is true that in the instant case the Legislature has not prescribed limitations in specific figures, but it has done so within ascertainable amounts. The difference is only one of computation and degree. Statutes are to be construed as a whole so that the various parts thereof may be harmonized. " In construing statutes all the provisions thereof should be considered and so far as possible each provision harmonized with the other so as to give effect to the legislative intent and the purpose sought to be accomplished ". (*Matter of Hennessy,* 164 N. Y. 393, 397.)

To ascertain and carry out the legislative intent is the paramount consideration to which all other rules of construction must be subordinated. (*People ex rel. Savings Bank* v. *Butler,* 147 N. Y. 164, 169.)

Where a statute clothes judicial officers with power to appoint and at pleasure remove personnel for whom in a companion section of the same enactment a standard of salaries is prescribed, it is fairly to be implied that to such officers is likewise entrusted the duty of applying the legislative standard. Particularly is this so where such a procedure has the support of established practice. (Cf. *Matter of Flaherty* v. *Craig,* 226 N. Y. 76, 80, 81.) Particularly, also, is this so, when in com-

panion sections of the same law, where a contrary procedure is contemplated, the Legislature has said so in clear and unequivocal language. (See Judiciary Law, §§ 168a, 354, 380a.)

Such holding has the support of reason, for it is manifestly as congruous to place the exercise of the power in the hands of the persons who are in the best position to pass upon the individual performance and merits of the personnel concerned, as it would be incongruous to put it in the hands of an appropriating body which, at best, could have but detached information and a cursory interest in such matters.

Respondents argue that the "equalization" of salaries called for is to be given effect as of the date of the enactment and subsequent re-enactments, basing such argument upon the statutory employment of the word "now" and citing section 34 of the General Construction Law in support thereof. At the same time respondents concede that strict adherence to this rule of construction in the case of a statute such as this — unchanged since its original enactment in the language sought to be construed, although amended in other respects — would require interpretation which would give the repeated portion of the original enactment a construction as of the time of the first adoption, the amendments only being construed as of a later date (*Ely and others against Holton,* 15 N. Y. 595, 599).

Again it must be emphasized that particular canons of construction are of value and are to be followed only where they are in harmony with and not in conflict with other and more cogent tests of the legislative purpose. In addition to section 34 of the General Construction Law there is to be considered also section 48 of the same law which provides that "words in the present tense include the future."

The "equalization" requirement of the present section 352 of the Judiciary Law originated in chapter 746 of the Laws of 1904 and, insofar as the attendants of the Kings County Court are affected, has continued since that date unchanged. It was re-enacted by chapter 35 of the Laws of 1909 (when it was made part of the Judiciary Law); by chapter 816 of the Laws of 1920 (at which time there was added a similar provision relative to the salaries of the attendants of the County Court of Bronx County); and by chapter 685 of the Laws of 1928 (at which time an "equalization" provision was added with respect to the librarian of the County Court of Kings County).

The claim which the City now makes in this respect was advanced by it in the case of *Matter of Martin* v. *Hylan* (213 App. Div. 519, *supra*) and rejected both at the Special Term

and by the Appellate Division. There the court said, at page 520: " This section of the Judiciary Law came into it when the law was enacted in 1909, but it was taken from chapter 746 of the Laws of 1904. This latter chapter was entitled ' An act in relation to the equalization of the salaries of the attendants of the County Court of Kings County and of the Supreme Court in such county,' and the body was in the same language as section 352 now carries. *From this it is evident the intent was to make the salaries of the attendants in the two courts equal not only then but always.* (See *Matter of Hammond* v. *City of Fulton,* 220 N. Y. 337, 342.) " (Emphasis added.) It is my opinion, for the reasons stated, that respondents have neither the right to " fix " the salaries paid to the attendants in the Kings County Court, nor are they vested with power by virtue of section 352 of the Judiciary Law to pass upon the propriety of such salaries when determined upon by the Board of County Judges, providing they are within the range of salaries paid to attendants in the Supreme Court, Kings County.

To argue, as respondents do, that " equalization " is to be gauged by salaries received by attendants having comparative lengths of service is to proffer a contention that is wholly gratuitous. Such argument necessarily must rest on mere speculation or surmise. The Legislature has prescribed no such condition insofar as the Supreme Court is concerned; it is not to be implied that they intended to do so insofar as the County Court is concerned. Obviously, the Legislature took into consideration the fact that elements other than mere length of service, such as particular merit, quality of service and character and difficulty and responsibility of assignment might and possibly would enter. Satisfactory consideration thereof can be given only by the courts most directly concerned.

Passing to still another objection, it is argued that " even assuming that the judges of the County Court, Kings County, have the power to fix the petitioners' salaries, there is no proof in this case that they ever exercised that power."

On the contrary, full and complete proof to refute this assertion appears in petitioners' affidavits and exhibits. The procedure followed in the present instance was the procedure customarily followed in such matters. That the county judges had fixed the salaries in the amounts requested was made known to respondents in the manner prescribed by the appropriate provisions of the Charter. I know of no other manner under which they were required by law to proceed.

Respondents assert, finally, that petitioners are barred of relief because of the lapse of more than four months from the final adoption of the budget on June 10, 1943 (by approval of the City Council), and service of the papers in this proceeding on November 13, 1943. They cite in support of this *Matter of Weldon* v. *Rheinstein* (283 N. Y. 753). That case is clearly distinguishable on its facts and is not in point.

Respondents were under a continuing duty to pay these salaries at the rate lawfully fixed (cf. *People ex rel. Cropsey* v. *Hylan,* 199 App. Div. 218, 221, affd. 232 N. Y. 601; *People ex rel. O'Loughlin* v. *Prendergast,* 219 N. Y. 377, 382, *supra*), and the four months' statutory bar set up in section 1286 of the Civil Practice Act did not begin to run until demand and refusal, in this case, by service of the petition and the accompanying papers. (See *Matter of DeLack* v. *Greene,* 170 Misc. 309; *Matter of Insley* v. *Shanahan,* 173 Misc. 33, 35.)

Petitioners are entitled to a final order as prayed for.