In the Matter of Felix C. Benvenga et al., Respondents, against Fiorello H. La Guardia et al., Constituting the Board of Estimate of the City of New York, Appellants.

Argued April 20, 1945; decided July 19, 1945.

*Ignatius M. Wilkinson, Corporation Counsel* (*William S. Lebwohl* of counsel), for appellants. I. Section 143 of the Judiciary Law clearly delegates to the Board of Estimate the power to increase or reduce additional compensation. The Legislature recognized this power and limited its exercise by providing in section 142 of the Judiciary Law a minimum additional compensation of $7,500 per annum. (General Construction Law, § 34; *Leach* v. *Auwell,* 154 App. Div. 170; *Matter of Abrams* v. *LaGuardia,* 287 N. Y. 717; *Matter of McCarthy* v. *LaGuardia,* 283 N. Y. 701; *Matter of Wingate* v. *McGoldrick,* 279 N. Y. 246; *Matter of Hetherington* v. *McGoldrick,* 279 N. Y. 687; *Matter of Rosenthal* v. *McGoldrick,* 279 N. Y. 688; *Matter of Martin* v. *Hylan,* 213 App. Div. 519; *Matter of Moskowitz, et al.* v. *La Guardia,* 183 Misc. 33, 268 App. Div. 918, 294 N. Y. 830.) II. The 1939 reduction of additional compensation for justices thereafter elected was reasonable and valid in all respects. It was the only possible method for reducing judicial compensation in accordance with the rule established by section 19 of article VI of the Constitution. This section clearly indicates that reductions in compensation for justices may be made and are lawful, provided only that such reductions do not become effective for any justice during his term of office. (*People ex rel. Morris* v. *Edmonds,* 15 Barb. 529; *People ex rel. Mitchell* v. *Haws,* 32 Barb. 207; *People ex rel. Noble* v. *Mitchell,* 220 N. Y. 86; *O'Donoghue* v. *United States,* 289 U. S. 516; *Williams* v. *United States,* 289 U. S. 553.)

*Samuel D. Smoleff* for Citizens Union of the City of New York, *amicus curiæ,* in support of appellants' position. I. There is a clear and long-recognized distinction between the obligatory payments provided for by section 142 of the Judiciary Law, and the discretionary payments authorized by section 143. (*Richmond Co. Gas-Light Co.* v. *Middletown,* 59 N. Y. 228.) II. The transitional disparity in salaries between incumbent and future justices is not a " classification " of justices and does not create any legal lack of uniformity. (*Finn* v. *City*

*of New York,* 282 N. Y. 153; *Yakus* v. *United States,* 321 U. S. 414.) III. Section 143 of the Judiciary Law should be interpreted as vesting authority and discretion in the Board of Estimate of the City of New York to grant or withhold additional compensation, subject to constitutional limitations in respect to salaries of incumbent judicial officers.

*John W. Davis* and *William R. Meagher* for respondents. I. Section 143 of the Judiciary Law does not delegate to the Board of Estimate the legislative power either to reduce the additional compensation fixed and payable to justices of the Supreme Court resident in the first and second judicial districts or to reclassify those justices in respect of that compensation. (*Hyatt* v. *Taylor,* 42 N. Y. 258; *Wm. B. Astor* v. *Mayor et al.,* 62 N. Y. 567; *Whitmore* v. *Mayor,* 67 N. Y. 21; *Polhemus* v. *F. R. R. Co.,* 123 N. Y. 502; *Matter of Jensen* v. *Southern Pacific Co.,* 215 N. Y. 514; *Matter of Thomas,* 216 N. Y. 426; *People* v. *Fitch,* 89 Hun 310; *People ex rel. Smith* v. *Gilon,* 66 App. Div. 25; *Williams* v. *Eggleston,* 170 U. S. 304; *Matter of LaGuardia* v. *Smith,* 288 N. Y. 1; *Matter of McAneny* v. *Bd. of Estimate, etc.,* 232 N. Y. 377; *Kelly* v. *Merry,* 262 N. Y. 151; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634; *Matter of Abrams* v. *LaGuardia,* 174 Misc. 421, 262 App. Div. 724, 287 N. Y. 717.) II. The power to increase does not include the power to reduce. (*Matter of Black* v. *O'Brien,* 241 App. Div. 639, 264 N. Y. 272; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533; *Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 327; *People* v. *Klinck Packing Co.,* 214 N. Y. 121; *Matter of Poughkeepsie Bridge Company,* 108 N. Y. 483; *Freeney* v. *Brown,* 182 Ga. 818; *Best* v. *Maddox,* 185 Ga. 78; *In re Breidenbach,* 214 Wis. 54; *Booth* v. *United States,* 291 U. S. 339; *Commonwealth* v. *Mann,* 5 Watts & S. [Pa.] 403.) III. The power to reclassify has not been delegated. (*Cane* v. *Mayor of City of New York,* 34 N. Y. S. 675; *Beach* v. *Kent,* 142 Mich 347.) IV. Section 142 of the Judiciary Law does not recognize expressly or by implication power in the Board of Estimate to reduce the additional compensation fixed and payable to justices of the Supreme Court resident in the first and second judicial departments. (*Matter of Martin* v. *Hylan,* 213 App. Div. 519; *Matter of Moskowitz* v. *LaGuardia,* 183 Misc. 33, 268

App. Div. 918, 294 N. Y. 830.) V. The attempted reduction violates the continuing equalization of the compensation of justices and surrogates required by section 178 of the Judiciary Law. VI. The attempted reduction is arbitrary and capricious and denies the equal protection of the laws in violation of the Constitution of this State. (*Hurtado* v. *California,* 110 U. S. 516; *People ex rel. Hoelderlin* v. *Kane,* 79 Misc. 140; *Hartford Co.* v. *Harrison,* 301 U. S. 459; *Mayflower Farms* v. *Ten Eyck,* 297 U. S. 266; *Nashville C. & St. L. Ry.* v. *Walters,* 294 U. S. 405; *People* v. *Orange County Road Cons. Co.,* 175 N. Y. 84; *People* v. *Cohen,* 272 N. Y. 319; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Truax* v. *Raich,* 239 U. S. 33; *Truax* v. *Corrigan,* 257 U. S. 312; *Missouri ex rel. Gaines* v. *Canada,* 305 U. S. 337; *Internat. Steel Co.* v. *Surety Co.,* 297 U. S. 657; *People ex rel. Doscher* v. *Sisson,* 222 N. Y. 387.)

CONWAY, J. The city has appealed from an order of the Appellate Division, issued under article 78 of the Civil Practice Act upon the petition of seventeen justices of the Supreme Court of the State of New York (hereinafter referred to as justices), which invalidated a resolution adopted by the Board of Estimate on November 2, 1939. The resolution provided: " That the Board of Estimate, pursuant to law, hereby reduces by two thousand five hundred dollars ($2,500) per annum, and fixes at $7,500 per annum the additional compensation payable to the justices of the Supreme Court for the counties within the City of New York, included within the First and Second Judicial Districts, to the Judges of the Court of General Sessions of the County of New York, and to the Surrogates and to the Judges of the County Courts of the counties within the City of New York, hereafter appointed or elected, including those elected upon the expiration of their present terms of office; * * * ." The justices were all elected thereafter. The order appealed from directed payment of additional compensation to them at the rate of $10,000 per annum, that being the rate in effect before the adoption of the resolution.

Article VI, section 19, of the New York State Constitution provides, insofar as relevant here: " All judges, justices and surrogates shall receive for their services such compensation as is now or may hereafter be established *by law,* provided only

that such compensation shall not be diminished during their respective terms of office." A similar provision is contained in article III, section 1, of the Constitution of the United States.

The question for our determination is whether the city possessed the power to make the reduction attempted. The matter of noninterference with the compensation of the judiciary, once it has been fixed by constitution or statute, has been a matter of extended consideration and discussion by the People since we became a nation. (See The Federalist, Vol. II, p. 107, McLean's edition, New York, MDCCLXXXVIII [Hamilton].) In discussing it there, Alexander Hamilton had occasion to say: " In the general course of human nature, *a power over a man's subsistence amounts to a power over his will.*" (Emphasis in original.) It has been considered of such importance in this instance that the governing bodies of the Association of the Bar of the City of New York, of the New York County Lawyers Association and of the Brooklyn Bar Association have directed their respective presidents to indorse upon the petition herein the support by those associations of petitioners' demand, and that has been done. In view of that, we shall go more into detail in this opinion than would ordinarily be necessary.

Justices of the Supreme Court are State officers whose compensation must be prescribed by the Legislature, subject to the constitutional provision quoted, *supra* (*Freund* v. *Hogan,* 264 N. Y. 203). The Legislature may confer limited authority to pay additional compensation to such justices and that power has been recognized and exercised since 1852 (*The People* v. *Edmonds,* 15 Barb. 529). No attempt under the first enactment delegating such power (L. 1852, ch. 374), nor under any subsequent act, looking toward a reduction of compensation, was ever attempted prior to the action complained of here in 1939.

Following the constitutional revision of 1925, there were added and amended sections 142 and 143, respectively, of the Judiciary Law. Section 142 was added in 1926 (L. 1926, ch. 155); section 143 was amended in 1928 (L. 1928, ch. 818).

The applicable portion of section 142 is as follows: " Those justices elected in the first and second judicial departments shall *continue* to receive from their respective cities, counties or districts, as now provided by law, such additional compensation as they are now receiving therefrom * * * The provi-

sions of this section shall apply to the justices now in office and to those hereafter elected or appointed."

Section 143, as amended in 1928, so far as pertinent here, provided: "The board of estimate and apportionment of the city of New York may provide for the raising by tax, and for payment to the justices of the supreme court resident in the first and second judicial districts, to the judges of the court of general sessions of the county of New York, to the surrogates and to the judges of the county courts of the counties within the city of New York, or to the justices, judges or surrogates of any of such courts, of such additional compensation as such board may deem proper."

The order of the enactment of the two sections is important. Section 142 continued the additional compensation the justices were receiving. Section 143 conferred power to provide further additional compensation. There was no provision for the reduction in the additional compensation when voted but only the provision in section 142 that that section should " apply to the justices now in office and to those hereafter elected or appointed." In other words, justices thereafter elected were to receive such additional compensation as justices previously elected might receive. To construe the language employed otherwise would disregard the idea of continuity clearly expressed in the words " shall continue " and would strike out the words " shall continue to receive " and write in their stead " shall receive ". We may not rewrite the statute. To put the emphasis on the word " *now* " in the first half of the sentence of section 142: " The provisions of this section shall apply to the justices now in office and to those hereafter elected or appointed " and to disregard the expression of futurity in the word " hereafter " in the latter half is to fail to give appropriate weight to the requirement that individual words should be construed in their setting with their context as background. In this instance the appropriate interpretive section of General Construction Law is section 48, reading: " *Tense, present.* Words in the present tense include the future." That is the interpretation to be made " unless the general object of the statute, or the context of the language used, indicates that a different meaning is intended." (*Matter of Hammond* v. *City of Fulton*, 220 N. Y. 337, 342. See to same effect *People ex rel.*

*Martin* v. *Hylan,* 213 App. Div. 519; affg. on opinion of Cropsey, J. at Special Term; *Matter of Moskowitz* v. *La Guardia,* 183 Misc. 33, affd. 268 App. Div. 918, affd. 294 N. Y. 830.) Clearly section 142 applied not only to the time when the statute was enacted but to the future and until the statute was changed. The very language of the statute evidences the legislative desire to assure a *non-discriminatory* and an *unreduced* compensation to *all* the justices elected in the first and second districts. The statute is to be read as a continuing one which speaks anew during each year of its existence and thus provides for a *continuance* of additional compensation as it is fixed by the board. That additional compensation as and when provided must be paid, in the very words of the statute, to " the justices now in office and to those hereafter elected or appointed." There was thus to be a *continuance* in the receipt of additional compensation by " those justices elected in the first and second judicial departments " — not by some of them.

The justices were classified only on the basis of residence. They were spoken of collectively and as a class, not as individuals. The language used referred to " justices, judges or surrogates of *any* of such courts " not to any of the justices, judges or surrogates of such courts. There was the provision that the section should apply " to the justices now in office and to those hereafter elected or appointed." There was to be equality between those in office and those to be incumbents later. There was to be no reduction in compensation for some. Section 143 was amended as a companion statute, to the 1928 amendment of section 142 but enacted first (L. 1882, ch. 40, § 1108; L. 1926, ch. 155; L. 1928, chs. 818, 819). The two sections are to be read together. When appropriate action was taken under section 143, section 142 made the continuance of such action obligatory to " those justices elected in the first and second judicial departments " then in office and " to those hereafter elected or appointed." When the Board of Estimate acted in 1930 to increase the compensation of justices it did so under permission granted by the Legislature. Having exercised the power granted, its action may not be undone by the same or a successor board except by legislative action or authority (*Matter of Poughkeepsie Bridge Company,* 108 N. Y. 483). Section 142 of the Judiciary Law is a general statute. Having exercised the limited power granted, the board

was *functus officio.* The Legislature may not grant the power to repeal general statutes and, incidentally, made no attempt to do so. (*Matter of N. Y. Elevated R. R. Co.,* 70 N. Y. 327; *People* v. *Klinck Packing Co.,* 214 N. Y. 121, 138; *People ex rel. Unger* v. *Kennedy,* 207 N. Y. 533; *Matter of Black* v. *O'Brien,* 89 N. Y. L. J., p. 3645, June 17, 1933, affd. 241 App. Div. 639, 264 N. Y. 272.) It made no attempt to delegate the power to reduce compensation. We may not imply an attempt to do that which the Legislature was without power to do expressly.

There is nothing new in the fact that authority may be granted to increase the compensation of a justice and authority to decrease it withheld. That is exactly what the People have declared to be their considered policy. In the Constitution of 1894 there was a prohibition against either increasing or decreasing the compensation of a justice during his term of office (art. VI, §§ 12, 15). In 1925 the People amended the Constitution so as to continue the prohibition against a decrease in compensation but struck out the prohibition against an increase. (Art. VI, § 19, quoted, *supra.*)

Statutes enacted in other States have received similar construction (*Freeney* v. *Brown,* 182 Ga. 818; *Best* v. *Maddox,* 185 Ga. 78; *Petition of Breidenbach,* 214 Wis. 54. See, also, *Beach* v. *Kent,* 142 Mich. 347).

In *Freeney* v. *Brown* (*supra*), county commissioners, by constitutional amendment, were granted power to provide for additional compensation to certain superior court judges. They did so but on their attempt to withdraw the increase and terminate the payments were held to be powerless so to do. They had been granted an option to act but having acted, had exercised all the power delegated.

So in *Best* v. *Maddox* (*supra*), following *Freeney* v. *Brown* (*supra*), it was held that the county commissioners had no authority to terminate or reduce the supplemental salary voted by them even as to a subsequent term of the judge.

Again in *In re Breidenbach* (*supra*), it was decided that a legislative act granting power to a county board to pay additional compensation to certain circuit judges was an " option " but that when it was exercised the county board was without power to rescind its action in granting or to withhold the additional compensation granted.

Analogously, the reduction of an increase in compensation is just as illegal as a reduction of the original compensation, when the power to decrease the compensation of a justice does not exist. (*Booth* v. *United States*, 291 U. S. 339, 352, citing *Commonwealth* v. *Mann*, 5 Watts & S. [Pa.] 403; *New Orleans* v. *Lea*, 14 La. Ann. Rep. 197; *Long* v. *Watts*, 183 N. C. 99.)

Thus, whether the question has arisen with respect to the power of State Legislatures, as restrained by State Constitutions, or with respect to the power of local bodies, exercising limited grants of power conferred by Legislatures, the answer has been the same in the Supreme Court of the United States and in the State supreme courts of Pennsylvania, Wisconsin, Georgia, Louisiana and North Carolina, viz., that the power to increase judicial compensation does not include a power to decrease it and that when the power to increase is once exercised, it may not be rescinded or modified without further express constitutional or legislative authority, depending upon the individual instance.

On five separate occasions during a period of nearly one hundred years, the Legislature has enacted legislation permitting the city to provide for additional compensation. In each instance, the authority delegated has been to provide " such additional compensation as such board may deem proper." In no instance has there been an express grant of power to the municipal body to reduce the compensation once fixed. Such power may not be implied. The theory that the power to increase compensation necessarily includes the power to take it away has been pronounced unsound. (*Booth* v. *United States*, 291 U. S. 339.) Moreover, the withholding on those five occasions of the express grant of power is indicative of legislative intent that the power of reduction should be withheld. (*Hyatt* v. *Taylor*, 42 N. Y. 258, 262; *Wm. B. Astor* v. *Mayor et al.*, 62 N. Y. 567, 578; *Whitmore* v. *Mayor*, 67 N. Y. 21, 22; *Polhemus* v. *F. R. R. Co.*, 123 N. Y. 502, 507; *Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514, 522, reversed on another point, 244 U. S. 205; *Matter of Thomas*, 216 N. Y. 426, 429.)

Indeed the *only* legislative expression during that period upon the subject has been *against* any reduction of that portion of the additional compensation payable by the city to the justices of the Supreme Court resident in the first and second judicial districts (L. 1932, ch. 637, § 2). That came about as

follows. The Governor convened an extraordinary session of the Legislature in 1932, transmitting an emergency message in which he recommended: " Legislation *permitting* the city of New York * * * to *reduce* any or all salaries *now mandatorily fixed* by State statute and *payable in whole or in part* from the city treasury; * * * " (Emphasis supplied). The Governor recited in the message that the city had requested " that immediate legislation be enacted *to enable* " it to effect economies to maintain its credit. (Emphasis supplied.) The Legislature enacted special legislation permitting the reopening of the budget for the year 1933 and granting to the local authorities the right to redetermine the salary of any official whose compensation was paid in whole or in part by the city, not only for the year 1933 but in " subsequent years during the pendency of the emergency ". Significantly, the Legislature expressly exempted from the application of the statute the justices of the Supreme Court resident in the first and second judicial districts, notwithstanding the fact that there was no constitutional limitation preventing such action as to justices elected in " subsequent years during the pendency of the emergency ". When the emergency legislation was enacted, the justices so exempted were receiving the $10,000 additional compensation now sought to be reduced. The Legislature made no distinction between justices then in office and those thereafter to be elected, although during the five-year period of emergency twenty-two justices (ten resident in the first district and twelve resident in the second district) were elected or re-elected to office.

Chapter 637 of the Laws of 1932, and the proceedings resulting in its enactment, establish beyond dispute the practical construction by the Legislature and the city of Judiciary Law, sections 142, 143, and the 1930 resolution of the board in three respects: (1) the additional compensation of $10,000 per annum was " mandatorily fixed " although paid by the city; (2) the Legislature had reserved to itself and had not delegated to the city, the power to reduce such additional compensation and (3) any reduction would have to be brought about either by the Legislature or by the city with the special permission of the Legislature.

The order should be affirmed, with costs.

DESMOND, J. (dissenting). Article 6, section 19, of the State Constitution directs that the justices of the Supreme Court " shall receive for their services such compensation as is now or may hereafter be established by law, provided only that such compensation shall not be diminished during their respective terms of office." From time to time, since the enactment of the Judiciary Act of 1847, the Legislature has made various changes in the salary paid by the State to these justices, the pay rate now in effect being stated in section 142 of the Judiciary Law, which says that each such justice " shall receive from the state the sum of fifteen thousand dollars per year " (the State pays an additional amount to justices assigned to the Appellate Division). Besides establishing a State-paid salary, however, the Legislature as long ago as 1852 recognized also that living costs in New York City justified the payment to the justices living therein a somewhat larger total compensation than was allotted to their brethren in other parts of the State (see *The People* v. *Edmonds,* 1853, 15 Barb. 529). The Legislature did not deal with that situation by voting the New York City justices any additional sum out of the State treasury but authorized the then Board of Supervisors of New York County (later the City Board of Estimate and Apportionment, still later the City Board of Estimate) to provide for the raising by tax, and for the payment to those particular justices, " of such additional compensation as such board may deem proper " (present section 143, Judiciary Law; original provision in L. 1852, ch. 374, held valid in *The People* v. *Edmonds, supra*). There is nothing in section 143 or in any of its predecessor statutes passed since 1852, banning downward, as well as upward, changes by the city in the " additional compensation ". The city's legislative body exercised the power so given it by the Legislature by fixing, from time to time over the years, additional increments of salary for the justices living in New York City. In 1852 the city's allowance was $1,500 per year. Gradually it was augmented until from 1909 to 1930 the additional amount so provided by the city for each resident justice was $7,500 per year. In 1930 it was further increased to $10,000 per year, thus making the total compensation of each such justice $25,000 per year. That total rate was maintained until 1939. In November of 1939 the Board of Estimate, as

part of an effort to reduce city expenditures, passed the resolution which the courts below have, in this proceeding, held invalid. That resolution purported to reduce by $2,500 per year, and thus to set at $7,500 per year, the city-paid compensation of Supreme Court justices residing in New York City (and of certain other judges) " hereafter appointed or elected, including those elected upon the expiration of their present terms of office ". The petitioners are seventeen justices of the Supreme Court, all residing in New York City (some in the first, others in the second judicial district) and all elected for the first time after November, 1939. They bring this proceeding to compel the fiscal officers of the city to pay to each of them not $7,500 per year, as per the November 1939 resolution, but $10,000, the amount that was being paid by the city to justices living therein, before November, 1939. This proceeding, therefore, involves no rights of any justice who held the office by election before that resolution went on the books. Petitioners have been successful in both courts below, the Appellate Division, by a 3 to 2 vote, affirming a Special Term order granting the petition.

The substance of the claim of petitioners and of the holdings below is this: that the Legislature has delegated to the New York City Board of Estimate only enough of the legislative salary-fixing power to permit the Board of Estimate to establish the amount of, and to increase, but never to reduce, the city-contributed part of these judicial salaries. That, of course, must mean that any increase of the city-paid increments becomes, as soon as provided for, frozen into law forever, fixed beyond the possibility of diminution. Admittedly there is nothing in the Constitution or in the Judiciary Law, expressly prohibiting the city from regulating its contribution to these salaries by making a reduction thereof, applicable to future-elected justices only. Indeed, a 1926 amendment (chapter 155 of that year) to section 142 of the Judiciary Law suggests that the Legislature recognized that the city would have such power under section 143, unless specifically negatived. That 1926 amendment, passed at a time when the city was paying $7,500 per year to each justice, added to section 142 this sentence: " Those justices elected in the first and second judicial departments shall continue to receive from their respective cities, counties or districts, as now provided by law, such additional

compensation as they are now receiving therefrom ''. That 1926 amendment for the first time put a floor under the city-paid increments of salaries, and of course prevented the city thereafter from fixing its part of the salary at any amount less than $7,500 per year. But a few years later, in 1930, the city, as aforesaid, increased its contribution to $10,000 per year per justice. Petitioners argue that the 1930 increase put a new floor under the city's rate of contribution. They base this, it seems, on another sentence of section 142. That other sentence, also added to section 142 in 1926, says that the provisions of that section, including of course the other 1926 amending language above quoted, '' shall apply to the justices now in office and to those hereafter elected or appointed.'' The argument is that the quoted language amounts to a continuing mandate of the Legislature to the city, that, as each new justice is elected, he must be paid the same total salary as is being paid, at the time of his election, to the justices already in office. If we accept that as the legislative intent, then petitioners, newly elected to the bench after the 1939 resolution, would have an absolute right to the same pay as the justices previously serving, and who had theretofore been granted by the city an increase of $10,000 per year. Such a construction seems unwarranted. The quoted language making applicable to justices thereafter to be elected the other requirement of section 142, that justices shall receive '' such additional compensation as they are now receiving '' means, naturally and reasonably, only that justices elected after 1926 as well as those on the bench before that year, shall have from the city not less than the $7,500 which was being paid by the city in 1926. The phrase '' such additional compensation as they are now receiving '' means $7,500 per year (see, as to construction of '' now '' General Construction Law, § 34). Nothing found elsewhere in the Constitution or statutes goes any farther than that.

It is urged upon us that the Legislature, empowering the city to pay additional compensation to justices of the Supreme Court, could not reasonably have intended that the power thus given the city should be exercised in such fashion that some New York City Supreme Court justices should receive smaller compensation than others. Such a situation, it is said, is so manifestly unfair and discriminatory that the statutes should

be construed so as to forbid it. But the alternative, too, would have a drastic consequence. If the city has to make the same payment to all the justices who make up the court at any given time, then increases are possible, but never reductions, since any reduction as to new justices would always, if enforced, put them into a salary bracket lower than that of their associates who had been elected before the reduction. Thus the city could grant increases, but only at its peril. It is not necessary to agree or disagree with the view expressed by the Special Term opinion herein that " it is repugnant to sound principles of judicial administration to have justices performing the same functions and carrying the same responsibilities receiving different compensation." (182 Misc. 507, 511.) The question for us is one of law only. The reduction of any justice's salary during his term of office is forbidden by the Constitution. No constitutional or statutory provision requires the maintenance of equality of pay among the justices. Discrimination of a sort thus becomes possible, of course, but the kind of discrimination here complained of does not run against any picked individuals or group but is a prospective lowering of salary as to all those, whoever they may be, who shall stand for election and be elected after a stated date. The Constitution itself, forbidding salary cuts for incumbents but authorizing them to be made prospectively, has set up a system whereby any lawfully-made reduction results in new-comers getting less than justices longer in office.

Affidavits in this record show us that the city has in fact (by 1941 and 1942 amendments to the 1939 resolution of the Board of Estimate) set up differences in salaries even among those elected after the passage of the 1939 resolution. But that grouping, which allows the higher ($10,000) city-paid salary to justices assigned to the Appellate Division and to justices re-elected for a second term, even though their current terms began after the resolution took effect, does not touch these petitioners. All we have before us are the rights of these seventeen justices who were elected for the first time after the passage of the 1939 resolution, and none of whom are serving on the Appellate Division. The legality of the exemption from the 1939 resolution, by the 1941 and 1942 modifications, of other groups of justices, is not before us on this appeal. Nor are we here concerned with the salaries of any of the surrogates of the counties

making up New York City, or with the proper construction of section 178 of the Judiciary Law, as to " continuing equalization " of those surrogates' salaries with the salaries of Supreme Court justices.

The order should be reversed and the petition dismissed.

LEWIS and DYE, JJ., concur with CONWAY, J.; LEHMAN, Ch. J., concurs for affirmance on the ground that the express power to increase compensation of justices of the Supreme Court of the First and Second Departments does not by fair inference include an implied power to withdraw in whole or in part an increase which has been granted to all the justices of these departments since any diminution of salary could apply only to justices elected thereafter; DESMOND, J., dissents in opinion in which LOUGHRAN, J., concurs; THACHER, J., taking no part.

Order affirmed.